**HOCHHEIM PRAIRIE FARM MUTUAL INSURANCE ASSOCIATION, Appellant,**

v.

**James J. BURNETT and Annie P. Burnett, Appellees.**

No. 2–84–052–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 30, 1985.

Thompson, Coe, Cousins & Irons, and Leo John Jordan, Dallas, for appellant.

Woodruff, Fostel, Wren & Simpson, and Michael A. Simpson, and Melton D. Cude, Bridgeport, for appellees.

Before FENDER, C.J., and BURDOCK and HOPKINS, JJ.

## OPINION

FENDER, Chief Justice.

The appellees, James and Annie Burnett, filed suit against appellant, Hochheim Prairie Farm Mutual Insurance Association, for breach of contract. Hochheim refused to pay the face amount of its insurance policy. Hochheim denied liability on the basis that the fire, which damaged the Burnetts' rent house, was intentionally set by or at the instance of appellees and asserted other policy defenses as well. The jury found in favor of the Burnetts on all issues, upon which verdict a judgment was entered for $44,473.31 and $17,000 in attorney's fees along with $3,400 in attorney's fees in the event of an appeal. Hochheim appeals from the granting of said judgment.

We affirm.

A brief history of the underlying facts is necessary. The record reveals the following. In May, 1981, the Burnetts purchased a rent house from a family member for $12,627. Approximately three months later, Hochheim appraised and insured the house for approximately $51,000 and accepted a premium in accordance with that amount. The Burnetts rented the house to third parties. Before their eviction two weeks before the fire, these tenants went without gas, water and other utilities. When the house was recovered there were maggots, roaches, fleas and rats in the house. Human excrement filled the sinks and bathtubs. However, there was testimony that there was no structural damage to the house and the jury found that the Burnetts had not failed to keep the house in good repair. There was testimony that the cleaning and repair work could be done for under $1,000. The Burnetts testified that they were in the process of cleaning the house when it burned approximately 11 months after it was insured.

██ In its first point of error, Hochheim contends that the trial court erred in submitting a total loss issue to the jury. Hochheim claims to be exempt from the application of TEX.INS.CODE ANN. art. 6.13.[1] It contends that art. 16.24 of the code requires that an article be made specifically applicable to farm mutual insurers and since art. 6.13 does not mention farm mutuals, it does not apply to Hochheim.

Article 6.13 states:

A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property.

On and after January 1, 1951, the provisions of the preceding paragraph of this article shall be incorporated verbatim in each and every fire insurance policy hereafter issued as coverage on any real property in this State; and it shall

be the duty of the Board of Insurance Commissioners, by proper order and procedure, to compel compliance with this statute.

*Id.*

Article 16.24(a) states:

Unless farm mutual companies are expressly mentioned, no provision of the Insurance Code, *except as contained in this chapter,* shall be applicable to insurers holding a certificate of authority under this chapter and no law hereinafter enacted shall apply to such companies unless such subsequent enactment states that it shall apply. (Emphasis ours).

*Id.*

Paragraph (b) of art. 16.24 then lists a series of insurance provisions which do apply to farm mutual insurers.

Hochheim contends that since art. 6.13 is not specifically enumerated in art. 16.24(b), that article does not apply to it. We disagree.

We find that art. 16.08(d) specifically mentions and makes art. 6.13 applicable to farm mutual insurers. Furthermore, art. 6.13 says that it applies to "each and every" fire insurance policy issued as coverage on real property in Texas. Before setting out the case law which we believe supports the foregoing proposition, we will set out art. 16.08(d) of the Insurance Code.

Article 16.08(d) of the Insurance Code states:

The by-laws may also provide that when a loss occurs, the companies may, at their option, provide and require that all or a certain percent of the money to be paid for the loss be put back into a replacement or repair of the property damaged or destroyed, provided such provision may be equally applicable to real and personal property and property exempt from execution such as homesteads or buildings on the homesteads and exempt personal property. *Provided also that farm mutual companies*

---

1. All references contained in the first four points of error are to articles within the Texas Insurance Code Annotated unless otherwise specified.

*may in their by-laws provide that Article 6.13 of this Code shall not be applicable to their contracts of insurance.* (Emphasis ours).

*Id.*

In *Southland County Mutual Ins. Co. v. Denson,* 276 S.W.2d 562 (Tex.Civ.App.— Texarkana, 1955, writ ref'd n.r.e.), the court found that art. 6.13 applied to county mutual insurers. At the time the policy in *Denson* was written, a provision analogous to art. 16.24 pertaining to county mutuals was in effect, now art. 17.22, which stated:

County mutual insurance companies shall be exempt from the operation of all insurance laws of this State, except as herein specifically provided.

County Mutual Insurance Company Act, ch. 99, sec. 23, 1937 Tex.Gen.Laws, Gen. & Spec. 184, 191, amended by Act of April 29, 1955, ch. 117, sec. 37, 1955 Tex.Gen.Laws 413, 431; Act of June 12, 1981, ch. 561, sec. 1, 1981 Tex.Gen.Laws 2298.

Also, a provision analogous to art. 16.-08(d) which pertained to county mutual insurers was in effect, now art. 17.06, Texas Insurance Code, which stated:

Provided also that county mutual companies may in their by-laws provide that the requirements of Article 4929, Revised Civil Statutes 1925, shall not be applicable to their contracts of insurance.

County Mutual Insurance Company Act, ch. 99, sec. 6, 1937 Tex.Gen.Laws, Gen. & Spec. 184, 186, amended by Act of April 29, 1955, ch. 117, sec. 33, 1955 Tex.Gen.Laws 423, 430.

The court in *Denson,* said:

Appellant [insurance company] did not plead or prove that it had provided by its by-laws that the requirements of Article 4929, now Article 6.13, Insurance Code, did not apply to the policy sued upon as it was authorized to do under article 4860a–20, sec. 6, R.C.S., now Article 17.-06, Insurance Code. Apparently it had not so provided or it would not have issued the policy subject to Article 4929.

Having issued the policy subject to Article 4929, it is bound thereby.

*Denson* at 565.

The Court of Appeals in Waco followed *Denson* in a case involving the same issue. The court, in *State and County Mutual Fire Ins. Co. v. Kinner,* 314 S.W.2d 871 (Tex.Civ.App.—Waco), *aff'd,* 159 Tex. 290, 319 S.W.2d 297 (1958), also held that art. 6.13 applied to county mutual insurers by way of art. 17.06, even though art. 6.13 does not specifically mention county mutual insurers.

Hochheim contends that prior to the 1973 amendment to art. 16.24, art. 6.13 applied to farm mutual insurers. However, the 1973 amendment to the Insurance Code incorporated art. 16.28 which said substantially the same thing as art. 16.24 does now. Therefore, if 6.13 applied before 1973, it surely applies afterwards.

Hochheim next contends that the trial court read the last sentence of art. 16.08(d) "in a vacuum" and misconstrued the meaning of the statute. Hochheim alleges that the "provided also" terminology of the last sentence of art. 16.08(d) "can only relate to the preceding description of an optional by-law discussed above to the effect that some or all of the insurance proceeds shall be used for repair or replacement, and has no sense or reference standing alone."

However, the courts in *Denson* and *Kinner* read art. 17.06, the statute for county mutuals, which is comparable to art. 16.-08(d), the statute for farm mutuals, the same way the trial court read art. 16.08(d) in this case. We agree with these courts' interpretation of the statute. We overrule appellant's first point of error.

In its second point of error, Hochheim contends that the evidence was insufficient to support the jury's finding that the house was a total loss.

■ Where the challenge to a jury finding is framed as an "insufficient evidence" point, we are to consider all the evidence in the case, both that in support of and that contrary to the finding, to determine if the challenged finding is so against the great

weight and preponderance of the evidence as to be manifestly erroneous or unjust. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). If the court so determines, the finding should be set aside and a new trial ordered. *Id.*

■ In considering an "insufficient evidence" point, we must remain cognizant of the fact that it is for the jury, as the trier of fact, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. *See Taylor v. Lewis*, 553 S.W.2d 153, 161 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). This Court may not substitute its judgment for that of the jury if the challenged finding is supported by some evidence of probative value and is not against the great weight and preponderance of the evidence. *See Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.).

■ The test for whether a structure is a total loss is whether a reasonably prudent owner, uninsured, desiring a structure like the one in question before the fire, would use the remnants of the structure to rebuild. *Glens Falls Insurance Co. v. Peters*, 386 S.W.2d 529 (Tex.1965); *Royal Ins. Co. v. McIntyre*, 90 Tex. 170, 37 S.W. 1068 (1896). The jury answered that a reasonably prudent owner would not so use the remnants.

The statement of facts contains several pages of testimony concerning this issue. There was testimony that: 1) the remaining portions of the house were leaning and barely standing; 2) the roof was burned in two and would have to be replaced; 3) the rafters, interior wall coverings, sheetrock and ceilings would have to be replaced; 4) the only salvageable remnants were the aluminum windows and steel siding; and 5) the house was a "shell."

John Herndon testified that he had repaired three fire damaged houses in the past. He testified that when a fire damaged house is rebuilt, an odor created by the scorched materials can recur in the house.

Hochheim asserts that Herndon based his testimony that the house was a total loss upon investment value of the repaired house versus cost of repair. It contends that this addresses the issue of whether to rebuild rather than the issue of whether to use the remnants once the decision to rebuild has been made.

The record shows that Herndon did consider this as a basis for his opinion that a reasonably prudent man would not use the remnants to rebuild. However, the other evidence, which goes to the proper issue of whether to use the remnants, supports the jury's findings.

Hochheim also contends that since Herndon testified that portions of the house that could be used in rebuilding comprised about one-half of the property, there was no total loss. Considering the testimony concerning the condition of the remnants, we disagree.

■ The mere fact that some of the charred structure might have been used in the new construction does not make the loss partial. *St. Paul Fire & Marine Ins. Co. v. Crutchfield*, 162 Tex. 586, 350 S.W.2d 534, 537 (1961). Based on our study of the record, we find there is sufficient evidence to support the jury's finding that the house was a total loss. Hochheim's second point of error is overruled.

Hochheim, in its third and fourth points of error, contends that the evidence was factually insufficient to support the jury's findings as to market value before and after the fire. In their reply, the Burnetts contend that if we overrule Hochheim's first point of error and find that art. 6.13 of the Texas Insurance Code applies to farm mutual insurers, we need not reach appellant's third and fourth points of error. We will address these issues in any case.

In addressing the third and fourth points of error, we necessarily must also address appellant's fifth point of error: that the trial court erred in allowing Burnett and John Herndon to testify as to the market

value of the house before and after the fire.

Hochheim first contends that Texas courts have never gone so far as to allow a homeowner who has not been qualified as an expert to testify concerning actual cash value of a structure before its damage. Case law indicates otherwise.

In *Burford Oil Co. v. Wadley*, 41 S.W.2d 689, 694 (Tex.Civ.App.—El Paso 1931, writ ref'd) the court held that the owner of a dairy was qualified to testify as to the real value of his dairy plant, land and improvements thereon. Texas courts have also allowed the owners of other kinds of property to testify as to its value. *See Premier Petroleum Co. v. Box*, 255 S.W.2d 298, 300 (Tex.Civ.App.—Eastland), *writ ref'd n.r.e. per curiam*, 257 S.W.2d 105 (Tex.1953) (owner allowed to testify as to value of land); *Barstow v. Jackson*, 429 S.W.2d 536, 538, (Tex.Civ.App.—San Antonio 1968) (owner allowed to testify as to value of automobile).

Burnett's testimony is also admissible under Rule 701 of the Texas Rules of Evidence, which states:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perceptions of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

Burnett testified as to his perception of what the value of the house was before and after the fire, based on his personal knowledge. He testified that: 1) he had owned rent houses before; 2) he knew the market value of the house; 3) he had listed it for sale before the fire; 4) he had knowledge of the construction and decor of the house; and 5) he had personally inspected the house after the fire.

■ Because the trial court could have found Burnett's testimony helpful to the determination of a fact in issue, the market value of the house, we find that the opinion evidence was properly admitted. TEX.R.

EVID. 701. In any case, it is largely discretionary with a judge as to whether a witness is qualified to testify as to market value, and the admission of such testimony should not be disturbed on appeal unless clear abuse of discretion is shown. *Barstow* 429 S.W.2d at 538; *Slack v. Magee Heirs*, 252 S.W.2d 274, 280, (Tex.Civ.App.—Galveston 1952), *aff'd*, 152 Tex. 427, 258 S.W.2d 797 (1953). We find no such abuse of discretion.

■ We also find that the trial court did not err in allowing Herndon to testify regarding market value before and after the fire inasmuch as his testimony met the requirements of Rule 701. He had personally viewed the house before and after the fire. After the fire he was hired to make repair estimates which necessarily call for an estimation of the value and usefulness of remnants left by the fire.

Herndon had a general knowledge of the value of houses in the vicinity because he had been in the construction business for 25 years in Wise County. On voir dire he stated that he had attended a real estate appraisal seminar. The court could have found that his testimony was helpful to the jury. We find no abuse of discretion here.

■ As for the jury's findings on market value before and after the fire, we find that there was evidence to support them and that the verdict was not against the great weight and preponderance of the evidence.

In addition to alleging that the evidence is insufficient to support the jury's findings, appellant asserts that the more persuasive testimony came from a realtor, Nadine Prevost, who testified that the house was worth only $19,000 before the fire and worth $9,500 after the fire. The $19,000 amount is approximately $32,000 less than the amount for which Hochheim appraised the house and accepted a premium in August of 1981. The jury chose not to believe that the house, because of its admittedly filthy yet structurally unchanged condition, had decreased in value by that amount.

In short, the jury had before it the testimony of these witnesses, the appraisal done by Hochheim and photographs taken of the house before and after the fire. The jury made its findings based on this proper, admissible evidence. We overrule Hochheim's points of error three, four and five.

■ In Hochheim's sixth point of error it contends that the trial court erred in refusing to admit the expert testimony of Everett Cox, a real estate broker, concerning market value. Cox had not been disclosed prior to the trial as an expert witness. Hochheim asserts that "good cause" existed for the court to allow Cox to testify because the Burnetts' attorney "opened the door" and invited such testimony. However, Hochheim admits that the alleged remarks cannot be found in the record. Because we have not been shown any error of the trial court, *see Trubell v. Patten*, 582 S.W.2d 606 (Tex.Civ.App.—Tyler 1979, no writ), we overrule Hochheim's sixth point of error.

■ In its seventh point of error, Hochheim contends that the trial court erred in refusing to submit its requested special issue concerning willful concealment by the Burnetts of the property's deterioration. The requested special issue, defendant's exhibit number 37, reads as follows:

Do you find from a preponderance of the evidence that plaintiffs willfully concealed or misrepresented that the insured property had greatly deteriorated in condition before the fire of July 20, 1982.

"It has never been the policy of the law to lengthen and complicate special issue charges by requiring trial courts to give issues that merely submit various phases or other shades of meaning of an element already in the charge. It is required only that each controlling issue raised by the pleading and the evidence be submitted once, fairly, simply and succinctly." *Northeast Texas Motor Lines v. Hodges*, 138 Tex. 280, 158 S.W.2d 487, 489 (1942); 3 McDonald, Texas Civil Practice sec. 12.09.-1.-D (rev.1983). We find that because a special issue, substantially the same as the one requested, was submitted to the jury, there was no error in the trial court's refusal. Special issue number ten reads:

Do you find from a preponderance of the evidence that the plaintiffs failed to keep their property in a good state of repair and free of fire hazard before the fire?

to which the jury answered, "We do not."

The jury found that the house was kept in a good state of repair. Therefore, it is not logical that the jury could also find that any "great deterioration" was willfully concealed. This, along with the jury's finding that the Burnetts did not willfully conceal any great deterioration in value, leads to the conclusion that there was no harm in the exclusion of the requested issue. Hochheim's seventh point of error is overruled.

■ Hochheim's eighth and ninth points of error concern the trial court's granting of attorney's fees. Hochheim first contends that there was error in the trial court's permitting the recovery of the attorney's fees. Hochheim asserts that TEX. REV.CIV.STAT.ANN. art. 2226 (Vernon Supp.1985) does not permit attorney's fees to be recovered in suits against insurers subject to the Unfair Claim Settlement Practices Act (article 21.21–2, Insurance Code). Article 2226 states:

Any person ... having a valid claim against a person or corporation for ... suits founded on oral or written contracts, may present the same to such persons or corporation; ... and if, at the expiration of 30 days thereafter, payment for the just amount owing has not been tendered, the claimant may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees.... The provisions hereof shall not apply to contracts of insurers issued by insurers subject to the provisions of the Unfair Claim Settlement Practices Act (Article 21.21–2, Insurance Code), ... or to art. 21.21, Insurance Code, as amended.... This Act shall be liberally construed to promote its underlying purposes.

Recent appellate court decisions have permitted recovery of attorney's fees in suits of this nature. *See Texas Farmers Ins. Co. v. Hernandez,* 649 S.W.2d 121 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.); *Aetna Fire Underwriters Insurance Co. v. Southwestern Engineering,* 626 S.W.2d 99 (Tex.App.—Beaumont 1981, writ ref'd n.r.e.); and *Prudential Ins. Co. of America v. Burke,* 614 S.W.2d 847 (Tex.Civ.App.—Texarkana 1981, writ ref'd), *per curiam* opinion at 621 S.W.2d 596 (Tex.1981) (the Supreme Court, although not specifically mentioning attorney's fees, said "The Court of Civil Appeals has correctly decided the case"). These courts reasoned that the exclusionary language contained in article 2226 excluded "only those claims against insurance companies where attorney's fees were already available by virtue of other specific statutes." *Prudential Ins. Co. of America v. Burke,* 614 S.W.2d at 850.

Hochheim contends that this reasoning fails to give effect to the exclusionary language of art. 2226. It cites *Standard Fire Ins. Co. v. Fraiman,* 588 S.W.2d 681 (Tex. Civ.App.—Houston [14th Dist.] 1979), and *Reynolds v. Allstate Ins. Co.,* 633 F.2d 1208 (5th Cir.1981) in support of their position that the statute should be strictly construed.

Despite the seemingly plain language behind article 2226, we hold that the logic behind the exclusionary language of article 2226 is to exclude only those claims where attorney's fees were already available under other statutes. *See Prudential,* 614 S.W.2d at 850. Hochheim's eighth point of error is overruled.

 In its ninth and last point of error, Hochheim contends that the trial court erred in allowing James Forbis to testify as an expert on attorney's fees. Hochheim asserts that Forbis did not have any personal knowledge of the case and had not taken an independent review of the matter.

Article 2226 permits the recovery of "a reasonable amount of attorney's fees" and states that "the usual and customary fees in such cases shall be presumed to be reasonable...." Forbis was called to testify as to the usual and customary fee arrangement in this type of case. No personal knowledge of the facts of the case is necessary.

 In view of the unrebutted testimony in the record that a fee of one-third of the amount recovered, or forty percent if the case is appealed, is a normal and reasonable contingent fee arrangement, we find that there was sufficient admissible evidence to support the award. *See Texas Farmers Ins. Co. v. Hernandez,* 649 S.W.2d at 124. Hochheim's ninth point of error is overruled.

The judgment is affirmed.