f:docs\cv0-079 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-90-079-CV





MT. HAWLEY INSURANCE COMPANY,



 APPELLANT


vs.





HOWARD RAGLAND, d/b/a LIGHTNING LAYDOWN,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT



NO. 441,865, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING



 





 Mt. Hawley Insurance Company ("Mt. Hawley") appeals a
judgment rendered against it in an action for breach of contract,
fraud, breach of a duty of good faith and fair dealing, and
violations of the Texas Insurance Code and the Deceptive Trade
Practices Act. The suit arises out of Mt. Hawley's refusal to
defend or indemnify its insured, appellee Howard Ragland, d/b/a
Lightning Laydown ("Ragland"). When Mt. Hawley did not provide the
court with proof of its financial responsibility as unauthorized
insurer defendants are directed to do under the Texas Insurance
Code, the trial court struck Mt. Hawley's answer and rendered an
interlocutory default judgment. See Tex. Ins. Code Ann. art. 
1.36, § 11 (Supp. 1991). A jury was selected to determine damages. 
Based on the jury verdict, the trial court rendered judgment in
favor of Ragland for actual damages, exemplary damages, interest,
and attorney's fees. 

 In seventeen points of error, Mt. Hawley complains, among
other things, that the trial court erred in requiring it to comply
with the statutory financial responsibility requirement, in
striking its pleadings, in awarding actual and exemplary damages,
in awarding attorney's fees based on a percentage of recovery, and
in allowing opposing counsel to make certain arguments to the jury. 
We will affirm the judgment of the trial court.



BACKGROUND


 Mt. Hawley insured Ragland's business, an oilfield
service business named Lightning Laydown, under a comprehensive
general liability policy with limits of $300,000. General Accident
Insurance Company of America ("General Accident") also insured
Ragland under an automobile liability insurance policy. On March
11, 1985, a trailer rig being towed behind a vehicle operated by
one of Ragland's employees broke loose, crossed the center line of
the highway, and crashed into a car, killing the driver, Jose
Trevino, and injuring the passenger, his wife.

 Mrs. Trevino and others ("the Trevinos") filed suit in
Travis County against Howard Ragland, Lightning Laydown, and
others, seeking damages of $65 million. The Trevinos alleged that
the accident was caused in part by the negligence of Howard
Ragland's employees in improperly hitching the trailer ball to the
towing vehicle and by inadequately welding the ball. General
Accident defended Ragland without reservation of rights.

 Ragland notified Mt. Hawley of the suit and requested
that Mt. Hawley furnish a defense. Mt. Hawley refused to defend
and denied coverage, relying on a policy exclusion for bodily
injury arising out of the ownership, maintenance, operation, use,
loading or unloading of an automobile owned or operated by an
insured. It also based its denial on the ground that the claim was
outside the hazards the policy covered, described as oil lease work
by contractors. Mt. Hawley also refused later demands that it
defend Ragland and settle with the plaintiffs.

 Shortly before trial on the Trevino claim, the plaintiffs
settled with Ragland. In a Mary Carter agreement among the
plaintiffs and Ragland, Lightning Laydown, and its employees, these
defendants agreed to pay the Trevinos $300,000, minus one-half of
the Trevinos' actual recovery from International Bank of Commerce,
another defendant. The jury found Lightning Laydown, International
Bank of Commerce, and other defendants guilty of negligence
proximately causing the collision, attributing seventy percent of
the fault to Lightning Laydown. (1) Based on the verdict, the court
signed a judgment March 10, 1988, awarding the Trevinos $110,300 to
be paid by the sole remaining negligent defendant, the
International Bank of Commerce.

 Ragland assigned General Accident all proceeds from his
claim against Mt. Hawley, up to General Accident's costs in
defending the Trevino case and in pursuing the claim against Mt.
Hawley. In May 1988, Ragland filed this action against Mt. Hawley
for refusing to defend and indemnify him in the Trevino case. He
asserted multiple causes of action, including breach of contract
and breach of the duty of good faith and fair dealing. Mt. Hawley
answered by general denial. On November 14, 1989, Ragland filed a
motion to strike Mt. Hawley's answer because of its failure to
comply with the statutory requirement that unauthorized insurers
show financial responsibility. See Tex. Ins. Code Ann. art. 1.36,
§ 11(a) (Supp. 1991). On November 30, after notice and hearing,
the trial court ordered Mt. Hawley to post a $2,000,000 bond by
5:00 p.m. the next day. The court also struck Mt. Hawley's answer
until the bond was filed, but restrained Ragland from taking a
default judgment until the deadline had passed. Mt. Hawley failed
to post bond. On December 4, the court rendered an interlocutory
default judgment with a writ of inquiry under which Mt. Hawley was
deemed to have admitted all allegations in the third amended
petition except the amount of damages.

 The case was tried to a jury which returned a verdict of
$4,000,000 in exemplary damages and found that Ragland was entitled
to an attorney's fee of one-third of his recovery. The trial court
awarded Ragland $440,747.70 in actual damages (the $300,000 Trevino
settlement plus $140,747.70 costs for defending the Trevino case,
both stipulated amounts); $4,000,000 in exemplary damages; legal
fees of $1,480,249.23 (one-third of $4,440,747.70); and interest.



THE FINANCIAL RESPONSIBILITY REQUIREMENT


 In its first point of error, Mt. Hawley complains of the
trial court's requiring it to post a bond, striking its pleadings,
and rendering a default judgment when it failed to comply. Mt.
Hawley argues that the court erred because the financial
responsibility requirement does not apply to it under these
circumstances. 

 Article 1.36, § 11 provides, in relevant part:



Sec. 11 (a) Before an unauthorized person or insurer
files or has filed any pleading in any court action,
suit, or proceeding . . . instituted against that person
or insurer through service of process, notice, order,
demand, or pleading under Section 7 or 8 of this article,
that person or insurer must either:


 (1) deposit with the clerk of the court in which
the action, suit, or proceeding is pending cash or
securities or a bond with good and sufficient
sureties to be approved by the court in an amount
to be determined by the court sufficient to secure
the payment of any final judgment that may be
rendered in that court proceeding; . . . .



Tex. Ins. Code Ann. art. 1.36, § 11 (Supp. 1991) (emphasis added).


 The Texas statute is drawn from the Uniform Unauthorized
Insurers Process Act, parts of which have been adopted in at least
forty states. See Retail Union Health & Welfare Fund v. Seabrum,
20 Ga. 695, 242 S.E.2d 18, 20 (1978); see also 18 Couch on
Insurance § 73:216 (2d ed. 1983). Mt. Hawley cites no Texas case
construing this provision and only a handful of foreign cases. We
are guided by the general principle that statutes relating to
insurance should be liberally construed in favor of the public. 
Johnson v. Prudential Ins. Co. 519 S.W.2d 111, 113 (Tex. 1975);
Mutual Life Ins. Co. v. Daddy$ Money, Inc., 646 S.W.2d 255, 257
(Tex. App. 1982, writ ref'd n.r.e.).

 The purpose of § 11 is to protect Texas residents,
domestic corporations, and foreign corporations lawfully doing
business in Texas from the practices of unsupervised and
unregulated foreign insurers. Specifically, § 11 is designed to
insure that foreign insurance companies demonstrate their ability
to satisfy any judgments Texas plaintiffs are able to obtain
against them. See Seabrum 242 S.E.2d at 20; Dean Constr. Co. v.
Agricultural Ins. Co., 249 N.Y.S.2d 247, 249 (1964).

 Mt. Hawley contends that the financial responsibility
requirement does not apply because (1) Mt. Hawley is a "surplus
lines" insurer, while § 11 applies only to "unauthorized" insurers,
and (2) Mt. Hawley was served with process under § 3, but § 11
applies only to an insurer sued under § 7 or § 8. We reject both
arguments. 

 Assuming Mt. Hawley has correctly characterized itself as
a surplus lines insurer, it is also an unauthorized insurer. Mt.
Hawley does not deny that it is an unauthorized insurance carrier
within the meaning of the Texas statute and, indeed, concedes the
fact on appeal. (2) The statute itself resolves any uncertainty. It
defines surplus lines insurers as a subset of the universe of
unauthorized insurers: "'Surplus lines insurer' means an
unauthorized insurer in which insurance coverage is placed or may
be placed under this Article." Tex. Ins. Code Ann. art. 1.14-2,
§ 2(b) (1981); see also 28 Tex. Admin. Code § 15.10 (1991). We
hold, therefore, that the reference in § 11 to "unauthorized"
insurers does not absolve surplus lines insurers from the financial
responsibility requirement. 

 Mt. Hawley also argues that the financial responsibility
requirement, § 11, does not apply because it was served with
process not under § 7 but, instead, under § 3. (3) Mt. Hawley not
argues, in the alternative, that as a surplus line insurer, it
cannot be served under § 7.1 (4) 

 We disagree with both contentions. First, §§ 3 and 7 are
complementary, rather than alternative, provisions. Section 7
provides a means for obtaining personal jurisdiction over an
unauthorized insurer by authorizing substituted service on the
insurance commissioner. One subsection states that "[p]rocedures
and fees for service of process are governed by § 3 of this
article." Tex Ins. Code Ann. art. 1.36, § 7(e) (Supp. 1991). 
Section 3 prescribes the procedure for serving process on the
commissioner, that is, the manner of accomplishing substituted
service. See C.W. Bollinger Ins. Co. v. Fish, 699 S.W.2d 645, 648
(Tex. App. 1985, no writ) (construing the previous statute).

 Mt. Hawley makes an alternative argument that it cannot
be served under § 7 because that section applies to unauthorized
insurers "doing acts of insurance business" as provided by Article
1.14-1, § 2, while as a surplus line insurer, it is regulated under
Article 1.14-2. See Tex. Ins. Code Ann. art. 1.36, § 7 (Supp.
1991). We reject Mt. Hawley's argument because the article also
provides: "A surplus line insurer may be sued . . . under the same
procedure provided for unauthorized insurers in Sections 3, 7, and
8 of this article." Tex. Ins. Code Ann. art. 1.36, § 12(a) (Supp.
1991). (5) In addition, Mt. Hawley's argument, even if correct,
relies upon its factual contention that Ragland's policy was a
lawful surplus lines transaction. The trial court found otherwise. 
Mt. Hawley does not direct us to support for its contrary position
and the record contains no statement of facts from the hearing on
the motion for partial summary judgment.

 Finally, Mt. Hawley claims that, even if it were subject
to the statutory requirement, the court erred by striking its
answer. It argues that it should have had notice that the
provision applied before its pleadings were stricken.

 Mt. Hawley had constructive notice of its
responsibilities under the Texas Insurance Code; it was charged by
law with awareness of all statutory requirements before placing its
first insurance policy in Texas. See Tex. Ins. Code Ann. art.
21.42 (1981). "It is well settled that the familiar principle
applied in the construction of contracts -- that statutes bearing
on the subject matter of the contract become a part of the contract
just as though they had been copied therein -- applies to the
construction of insurance contracts." Harkins v. Indiana
Lumbermen's Mut. Ins. Co., 234 S.W.2d 430, 431 (Tex. Civ. App.
1950, no writ).

 The statute is unambiguous: the bond is mandatory. The
insurer must file the required bond before filing any pleading. In
this case, Mt. Hawley filed its answer more than 17 months before
Ragland brought to the court's attention that Mt. Hawley had not
filed a bond. Ragland filed his motion twenty days before the
court struck Mt. Hawley's answer. The statute does not require
that the court give a party any time certain for filing a bond. 
Presumably, the bond must be filed before answer date or the
unauthorized insurer risks default judgment. Because the statute
does not mandate what action the trial court should take when an
insurer fails to file a bond, the court has wide discretion in
responding to a failure to file. The record also does not reflect
that Mt. Hawley requested more time than it was actually given.

 Courts in other states agree that when the unauthorized
insurer fails to post bond, the court may strike the insurer's
pleadings. See Akron Co. v. Fidelity Gen. Ins. Co., 250 F.Supp.
201 (N.D. Ohio 1964) (construing the Ohio statute drawn from the
Uniform Unauthorized Insurers Process Act). Seabrum, the case upon
which Mt. Hawley relies for the position that striking the
insurer's answer is improper, is distinguishable. In Seabrum, the
insurer unsuccessfully challenged the constitutionality of the bond
requirement and tendered the bond once it learned of the insured's
motion to strike its pleadings. Seabrum, 242 S.E.2d at 19. In the
present case, Mt. Hawley never tendered a bond.

 We overrule Mt. Hawley's first point of error.



FAILURE TO BRING FORWARD A STATEMENT OF FACTS



 In its second through fifth points of error, Mt. Hawley
charges that the trial court committed numerous errors at the
November bond hearing. Specifically, Mt. Hawley argues that
Ragland waived his right to require the bond by his delay; that the
court erred in setting the bond at $2,000,000 and in not allowing
a postponement; and that the bond and default judgment denied it
due process of law.

 All of these contentions involve issues of fact, but Mt.
Hawley has failed to bring forward a record of the November 30
hearing. The appellant has the burden to see that a sufficient
record is presented to show error requiring reversal. Tex. R. App.
P. Ann. 50(d) (Pamph. 1991); Balla v. Northeast Lincoln Mercury,
717 S.W.2d 183, 185 (Tex. App. 1986, no writ). In the absence of
a statement of facts, we must presume the evidence supports the
finding. Guthrie v. Nat'l Homes Corp., 394 S.W.2d 494, 495 (Tex.
1965); Adams v. Sadler, 696 S.W.2d 690, 691 (Tex. App. 1985, writ
ref'd n.r.e.).

 Mt. Hawley's second through fifth points of error are
overruled.



DAMAGES


 Mt. Hawley attacks the damages award in its sixth through
eleventh points of error. Specifically, Mt. Hawley complains that
the trial court erred in rendering judgment against it for actual
and exemplary damages because no actual damages were found, and
because there was either no evidence or insufficient evidence of
any actual damages. In addition, Mt. Hawley urges that the court
erred in awarding exemplary damages because there is no finding of
actual damages in a cause of action for which exemplary damages are
available. Finally, appellant argues that the court erred in 
excluding evidence that Ragland's automobile liability insurance
carrier paid all obligations he incurred.

 When Mt. Hawley failed to post the required bond, the
court entered an interlocutory default judgment deeming Mt. Hawley
to have admitted all allegations in plaintiff's third amended
original petition except for the amount of damages. The following
allegations were deemed admitted:



 1. Mt. Hawley issued a comprehensive general liability
policy to Ragland covering the Trevinos' claims.

 

 2. Mt. Hawley failed to properly investigate the
claims. 


 3. Mt. Hawley wrongfully refused to defend and
indemnify Ragland against the Trevinos' claims. 


 4. Mt. Hawley denied coverage without a reasonable
basis when it should have known that there was no
reasonable basis for denying coverage. 


 5. Mt. Hawley did not attempt in good faith to
effectuate a prompt, fair and equitable settlement
of the Trevinos' claims against Ragland.


 6. Mt. Hawley was negligent and acted with malice. 


 7. Mt. Hawley's actions and/or omissions constituted
gross negligence and were done with reckless and
heedless disregard for Ragland's rights.


 8. Mt. Hawley failed to give due consideration to its
insured's financial interest.


 9. Mt. Hawley fraudulently induced Ragland to purchase
an insurance policy by wrongfully concealing
material facts regarding its coverages and its
status as an "unauthorized insurer." 


10. Mt. Hawley engaged in conduct prohibited by the
Texas Insurance Code, by representing that the
policy provided Ragland characteristics and
benefits which it did not have, by advertising
protection it did not intend to afford, by
misrepresenting the applicable policy coverages to
induce Ragland to forfeit the policy, and by making
untrue, deceptive and misleading statements with
respect to the policy. 


11. Mt. Hawley engaged in unlawful practices under the
Insurance Code by knowingly misrepresenting
pertinent facts and/or policy provisions relating
to coverage, failing to adopt and implement
reasonable procedures for prompt investigation of
claims, not attempting in good faith to effectuate
prompt and equitable settlement of claims submitted
in which liability has become reasonably clear,
refusing to pay claims without conducting a
reasonable investigation based upon all available
information, failing to provide promptly a
reasonable explanation of the basis for denial of
the claim, and failing to exercise good faith in
the investigation and processing of the Trevinos'
claims. 


12. Mt. Hawley failed to make disclosures as required
by the rules and regulations of the Texas State
Board of Insurance. 


13. Mt. Hawley engaged in unconscionable conduct.



The interlocutory ruling adjudged Mt. Hawley legally indebted to
Ragland under theories of breach of contract, breach of a duty of
good faith and fair dealing, fraud, and violations of the Texas
Insurance Code and the Texas Deceptive Trade Practices Act. See
Tex. Ins. Code Ann. art. 21.21 (Supp. 1991); Tex. Bus. & Com. Code
Ann. § 17.41 et seq. (1987).

 Thus, when the case went to the jury by writ of inquiry,
the jury's only task was to assess damages. Tex. R. Civ. P. Ann.
243 (1976). This task was further limited because Mt. Hawley had 
stipulated that the Ragland-Trevino settlement was $300,000, that
the legal fees and expenses for the Trevino defense were
$140,747.70, and that both sums were reasonable.

 The jury awarded Mt. Hawley four million dollars
($4,000,000) in exemplary damages and one-third (33-1/3%) of that
sum as attorney's fees. Mt. Hawley does not complain of the size
of the exemplary damage award or seek remittitur. Instead, Mt.
Hawley argues that Ragland suffered no loss -- General Accident
defended him in the underlying suit and paid for his $300,000
settlement and his legal fees. The default judgment and
stipulations notwithstanding, Ragland could not recover, Mt. Hawley
contends, because he suffered no loss and thus could show no actual
damages. 

 Mt. Hawley is correct that, as a general rule, the trier
of fact must find and award actual or compensatory damages before
it may award punitive damages. Bellefonte Underwriters Ins. Co. v.
Brown, 704 S.W.2d 742, 745 (Tex. 1986); see Annot., Sufficiency of
Showing of Actual Damages to Support Award of Punitive Damages --
Modern Cases, 40 A.L.R. 4th 25 (1985). We reject Mt. Hawley's
no-loss argument for two reasons: first, the argument is
insupportable under the combined weight of the default judgment and
the stipulations and second, the trial court's proper application
of the collateral source rule undercuts the argument.



A. The Default Judgment and the Stipulations

 A default judgment treats all matters properly alleged in
the petition, except unliquidated damages, as admitted. Stoner v.
Thompson, 578 S.W.2d 679, 684 (Tex. 1979); Nixon v. Nixon, 348
S.W.2d 434, 437 (Tex. Civ. App. 1961, writ ref'd n.r.e). The
default establishes liability and proximate cause for the cause of
action alleged. Morgan v. Compugraphic Corp., 675 S.W.2d 729, 731
(Tex. 1984). Pursuant to Rule 243, the complaining party must come
forward at the damages hearing with competent evidence to establish
that the event actually caused the alleged injuries and to show the
amount of the damages to which the party is entitled. Morgan, 675
S.W.2d at 732-33; see also First Nat'l Bank v. Shockley, 663 S.W.2d 
685, 688 (Tex. App. 1983, no writ).

 The record in the trial court contains evidence that Mt.
Hawley refused to defend Ragland in the action in which the
Trevinos sued Ragland, along with other defendants, for $50 million
in punitive damages and $15 million in actual damages. The jury in
the underlying suit found Lightning Laydown to be seventy percent
responsible for the Trevinos' injuries. It assessed damages at
$2,206,000, so in the absence of his settlement, Ragland would have
been liable for about $1.6 million.

 The default judgment established Mt. Hawley's liability
for refusing, in bad faith, to defend Ragland or settle the Trevino
suit. See Fleming Mfg. Co. v. Capitol Brick, Inc., 734 S.W.2d 405,
409 (Tex. App. 1987, writ ref'd n.r.e.). Where liability is
established, an insured is entitled to recover as actual damages
the costs of the defense and settlement -- minus any properly
claimed offsets, none of which are in issue here. See Texas United
Ins. Co. v. Burt Ford Enterprises, Inc., 703 S.W.2d 828, 835 (Tex.
App. 1986, no writ).

 The only question remaining for the jury is whether the
amount of actual damages suffered was reasonable. See Employers
Casualty Co. v. Block, 744 S.W.2d 940, 942-43 (Tex. 1988). Under
these circumstances, the trial court properly awarded actual
damages without submitting a jury issue on that point; indeed, it
would have been inappropriate to submit such a question. See
Block, 744 S.W.2d at 944; see also Texas Emp. Ins. Ass'n v. Miller,
596 S.W.2d 621, 625 (Tex. Civ. App. 1980, no writ) (uncontroverted
issues need not be submitted to the jury by the trial court); City
of Wichita Falls v. Ramos, 596 S.W.2d 654, 658 (Tex. Civ. App.
1980, writ ref'd n.r.e.); Tex. R. Civ. P. Ann. 278, 279 (Supp.
1990).



B. The Collateral Source Rule

 In support of its no-loss argument, Mt. Hawley argues
that the trial court erred in using the collateral source rule to
exclude from evidence General Accident's payment of claims in the
underlying suit. Mt. Hawley argues that Ragland seeks a duplicate
recovery, citing several foreign cases for the proposition that an
insured is not harmed by an insurer's refusal to defend if another
insurer provides the defense. We have been unable to find any
Texas authority supporting the position that the collateral source
rule should not be applied under these facts.

 The collateral source rule is an exception to the general
principle forbidding more than one recovery for the same loss. 
Brown v. American Transfer & Storage Co., 601 S.W.2d 931, 934-36
(Tex.), cert. denied, 449 U.S. 1015 (1980). "The theory behind the
collateral source rule is that a wrongdoer should not have the
benefit of insurance independently procured by the injured party,
and to which the wrongdoer was not in privy." Brown, 601 S.W.2d at
934. In Brown, the supreme court concluded that the collateral
source rule applied, because the defendant had not made any
contribution to the procurement of the separate insurance policy,
and was not in privity, because the plaintiff paid for it. Brown,
601 S.W.2d at 935-36. 

 Similarly, in the present cause, Ragland independently
bought insurance from General Accident. Mt. Hawley was not privy
to that contract. Thus, under Brown, Mt. Hawley should not benefit
from Ragland's procurement of other insurance. We hold that the
trial court did not err by excluding evidence that General Accident
paid the claims against Ragland in the Trevino matter. 

 Mt. Hawley further argues that the trial court erred in
awarding actual damages because Ragland's proper recourse was to
pursue a subrogation claim for the pro rata part of the settlement
and defense costs that General Accident was obliged to pay. We
need not address the merits of this argument. The cause was
prosecuted as a subrogation action and, even if the actual damages
in the present case should have been limited to a pro rata
recovery, Mt. Hawley failed to preserve error as required by Tex.
R. App. P. Ann. 52(a) (Pamph. 1991). 

 In the trial court, Mt. Hawley never contested the amount
of the actual damages award by pleading an offset, by requesting a
remittitur, or by taking any other step. Mt. Hawley did not
complain of excessive damages in a motion for new trial as required
by Tex. R. Civ. P. Ann. 324 (b)(4) (Supp. 1991). A point of error
not preserved is not before the appellate court for review. Lemons
v. EMW Mfg. Co., 747 S.W.2d 372, 373 (Tex. 1988). Further, none of
Mt. Hawley's seventeen points of error claim that the actual or
exemplary damage awards were excessive or should be reduced. An
appellate court is not authorized to reverse a trial court's
judgment in the absence of properly assigned error. State Bd. of
Ins. v. Westland Film Indus., 705 S.W.2d 695, 696 (Tex. 1986).



C. The Relationship Between Exemplary and Actual Damages

 Mt. Hawley argues that the court erred in rendering
judgment against it because there is no finding establishing any
actual damages relating to a cause of action for which exemplary
damages were recoverable. Mt. Hawley urges that in an action for
both breach of contract and a resulting tort, tort damages
independent of the breach of contract damages must be recovered
before exemplary damages may be awarded. See Jim Walter Homes,
Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986); Lone Star Steel Co.
v. Scott, 759 S.W.2d 144, 156 (Tex. App. 1988, writ denied).
Mt. Hawley argues that the actual damages here -- the sum of the
settlement and defense costs -- are damages for breach of contract
and, therefore, will not support an award of exemplary damages.

 We disagree. A common law duty of good faith and fair
dealing may arise as a result of a special relationship between
parties governed or created by a contract. Crim Truck & Tractor
Co. v. Navistar Int'l Transp. Corp., 34 Tex. Sup. Ct. J. 647, 648
(June 12, 1991); Arnold v. Nat'l County Mut. Fire Ins. Co., 725
S.W.2d 165, 167 (Tex. 1987). Breach of a duty of good faith and
fair dealing is compensable in tort and entitles the wronged party
to recover all actual damages proximately caused by the breach. 
Chitsey v. Nat'l Lloyds Ins. Co., 738 S.W.2d 641, 643 (Tex. 1987). 
In addition, exemplary damages are recoverable under the same
principles allowing recovery of those damages in other tort
actions. Arnold, 725 S.W.2d at 168.

 Ragland's relationship with Mt. Hawley is a special
relationship, entitling him to recover for breach of a duty of good
faith and fair dealing. The special nature of the relationship
created by an insurance contract imposes a duty, independent of
that created by the terms of the contract, on the insurance company
to treat its insured fairly and in good faith. Arnold, 725 S.W.2d
at 167. The default judgment established that Mt. Hawley handled
this claim with malice, gross negligence, and reckless and heedless
disregard of Ragland's rights. Based on that judgment, the trial
court did not err in awarding the actual tort damages that it did. 
Those damages furnish a sufficient basis for the award of exemplary
damages. See Fleming Mfg. Co., 734 S.W.2d at 409. 

 Equally unpersuasive is Mt. Hawley's argument that,
because the tort damages equaled the amount Ragland would have
received for breach of contract, the actual damages do not support
exemplary damages. The damages here could have been recovered
under either theory -- breach of contract or breach of a duty of
good faith and fair dealing. In a similar case, the supreme court
held, "in this case, under either theory, breach of contract or
tort, the recovery is the same." Chitsey, 738 S.W.2d at 644. 
Chitsey suggests that the damages will not be conclusively presumed
to be breach-of-contract damages simply because the same amount
would be recovered under either theory. See also American Nat'l
Petroleum Co. v. Transcontinental Gas Pipe Line Corp., 798 S.W.2d
274, 278 (Tex. 1990); Vail v. Texas Farm Bureau Mut. Ins. Co., 754
S.W.2d 129, 136 (Tex. 1988). 

 The cases Mt. Hawley relies on are inapposite. Neither
Jim Walter Homes nor Lone Star Steel involved a contract giving
rise to a duty of good faith and fair dealing; neither was a bad
faith insurance case. See Jim Walter Homes, 711 S.W.2d at 618;
Lone Star Steel, 759 S.W.2d at 156. Under the default judgment,
Mt. Hawley was deemed to have admitted breaching its duty of good
faith and fair dealing; therefore, the actual damages resulting
from its conduct support an award for exemplary damages. The trial
court properly awarded exemplary damages.

 Mt. Hawley's sixth through eleventh points of error are
overruled.



ATTORNEY'S FEES


 In its twelfth through fourteenth points of error, Mt.
Hawley attacks the award of a one-third fee to Ragland's attorneys. 
See Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (1986). It argues
that the court erred in submitting a jury question asking the jury
to determine Ragland's reasonable and necessary attorney's fees as
a percentage of his total recovery. It also complains that there 

is no evidence or insufficient evidence from which the jury could
conclude that reasonable and necessary legal fees amounted to one-third of the recovery.

 First, the court did not err in submitting the question
as it did; it need not pose the question in terms of dollars and
cents. In similar cases, appellate courts have approved 
submissions of attorney's fees that inquired what percentage of the
recovery should be awarded:



We do not find it crucial . . . that the jury know how
much money counsel for appellees would receive, although
the jury could have calculated in dollars the amount in
controversy and what an award of 33 1/3 percent
attorney's fees would represent . . . . Whether the fee
awarded was proved reasonable is the relevant question
. . . .



Liberty Mut. Ins. Co. v. Allen, 669 S.W.2d 750, 755 (Tex. App.
1983, writ ref'd n.r.e.); see also March v. Thiery, 729 S.W.2d 889,
897 (Tex. App. 1987, no writ); Hochheim Prairie Farm Mut. Ins. v.
Burnett, 698 S.W.2d 271, 278 (Tex. App. 1985, no writ); Texas
Farmers Ins. Co. v. Hernandez, 649 S.W.2d 121, 124 (Tex. App. 1983,
writ ref'd n.r.e.).

 Second, sufficient evidence supports the award of
attorney's fees. An Austin attorney testified that suits against
insurance companies for bad faith are customarily handled on a
contingent fee basis. He also testified that in Travis County a
reasonable contingent fee would range from one-third to 40%. His
testimony is sufficient to support the award. See Burnett, 698
S.W.2d at 278; Hernandez, 649 S.W.2d at 125.

 Third, contrary to Mt. Hawley's argument, a plaintiff is
not required to show that an attorney's fee is "necessary," but
only that is "reasonable." Tex. Civ. Prac. & Rem. Code Ann. 
§ 38.001 (1986). The statute also provides that the reasonableness
of the fee is presumed where it is shown that it is usual and
customary. See Tex. Civ. Prac. & Rem. Code Ann. § 38.003 (1986). 
In the present cause, there was unrebutted testimony that a one-third contingent fee was usual, customary, and reasonable. That
evidence is sufficient to support the award. Burnett, 698 S.W.2d
at 278; Allen, 669 S.W.2d at 755.

 We overrule Mt. Hawley's twelfth through fourteenth
points of error.



JURY ARGUMENT


 In its fifteenth point of error, Mt. Hawley argues that
the trial court erred in overruling its objection to Ragland's jury 
argument because it was unsupported by and outside the record. 
Specifically, it claims that the jury argument improperly referred
to Mt. Hawley's "profits," "profit ratio," and "a fair rate of
return," even though the record contained no such evidence.

 Gary Bonham, Mt. Hawley's Vice President of Claims,
testified that gross premiums for insurance written in the State of
Texas in 1988 were $8,586,582 and that direct losses paid in the
state were $494,991. During jury argument, Ragland's counsel
referred to those figures and said:



Now if you subtract those, which I did during the lunch
hour, this is how much money these people took in, less
what they paid out in Texas in 1988, just one year.


What I am saying is when you come down to the punitive
damage award, exemplary damage award, right here in
answer to No. 1, let's just take these people's profits
away from them in Texas for one year, 1988. That will
get the message across to them. That figure right here
is what I suggest.



Mt. Hawley objected that these figures did not represent profits. 
The court overruled the objection, instructing the jury to rely on
its own memory of the testimony about the figures. 

 Ragland then told the jury that if it figured "the profit
ratio on these figures here, it would be something like 90% or
95%." Mt. Hawley objected that there was no evidence of a 90% or
95% profit ratio and that Ragland's counsel made this up out of
whole cloth. The trial court overruled the objection.

 Finally, Ragland urged the jury to "figure out what you
think a fair rate of return [is] for an insurance company that does
business in a legal manner in the state and then apply that to
these figures" as another way of calculating exemplary damages. 
Again, Mt. Hawley objected that there was no evidence of a
reasonable rate of return for insurance companies in Texas. The
jury awarded sizeable damages, but far less than Ragland suggested.

 To reverse a judgment because of improper argument of
counsel, two elements must appear: (1) the argument must have been 
improper; (2) such as to satisfy the reviewing court that it was
reasonably calculated to cause and probably did cause the rendition
of an improper judgment. Houston Lighting & Power Co. v. Fisher,
559 S.W.2d 682, 684 (Tex. Civ. App. 1978, writ ref'd n.r.e.); see
also Standard Fire Ins. Co. v. Reese, 584 S.W.2d 835, 839 (Tex.
1979).

 We hold that Ragland's jury argument was proper. 
Evidence about Mt. Hawley's gross premiums and direct losses for
1988 were introduced without objection. In addition, the same
witness testified, without objection, to the company's low
overhead, mentioning that four claims examiners handled all the
nationwide claims of Mt. Hawley and two other insurance companies,
that Mt. Hawley employed no investigators, and that Mt. Hawley
conducted its Texas business through a Louisiana firm of
underwriters. 

 Counsel is afforded considerable latitude in making jury
argument, and is "entitled to draw inferences from the evidence
presented, whether reasonable or not." Fisher, 559 S.W.2d at 684; 
see also 3 McDonald, Texas Civil Practice, § 13.052, at 389 (1983). 
We can distinguish the present cause from those cited by Mt.
Hawley. Here, Ragland's attorney drew inferences from the evidence
presented. World Wide Tire Co. v. Brown, 644 S.W.2d 144, 146 (Tex.
App. 1982, writ ref'd n.r.e.), involved an improper argument urging
the jury to put itself in the shoes of the plaintiff. Southland
Corp. v. Burnett, 790 S.W.2d 828, 830 (Tex. App. 1990, no writ),
involved speculative evidence admitted over proper relevancy
objections. Even if the argument was improper, we hold that it did
not cause rendition of an improper judgment. Mt. Hawley's
fifteenth point of error is overruled.

 In its remaining points of error, Mt. Hawley asks this
Court, in the event of remand, to consider the trial court's action
in granting Ragland's motion for partial summary judgment. As this
cause is not being remanded, we need not address these points of
error. We overrule all of Mt. Hawley's points of error.

 The judgment of the trial court is affirmed.



 

 Marilyn Aboussie, Justice

[Before Chief Justice Carroll, Justices Aboussie and Jones]

Affirmed

Filed: August 21, 1991

[Publish] [Do Not Publish]

1. 

 [1]  The judgment was affirmed on appeal to this Court. 
Trevino v. Lightning Laydown, Inc., 782 S.W.2d 946 (Tex. App.
1990, writ denied). Ragland's personal attorney testified that
Lightning Laydown, Inc. was really a sole proprietorship of
Ragland, but there is no explanation in the record for why
Lightning Laydown, Inc. was identified as a Texas corporation and
a separate defendant in the Trevino case and was identified in
the judgment as a separate defendant appearing through its
corporate representative. 
2.   We note without relying thereon that, before striking the
pleadings and rendering default judgment, the trial court had
granted a partial summary judgment declaring that Mt. Hawley was
an unauthorized insurer and that Ragland's policy was in
violation of the statutory requirements for surplus lines
insurers. Further, Mt. Hawley's Vice President of Claims, Gary
Bonham, testified by deposition that, as a surplus lines carrier,
Mt. Hawley is an unauthorized insurer.
3.   Section 8 of Article 1.36 concerns service through the
secretary of state. No one suggests that this section was
invoked; therefore, we do not discuss it further.
4.   The enabling legislation's stated purpose is "to clarify
and consolidate procedure for effecting service of process on
companies doing business in Texas, whether licensed or not
. . . ." 1987 Tex. Gen. Laws, ch. 46, § 2, at 79.
5. 

 [5]  Formerly art. 1.14-2, § 11. 1967 Tex. Gen. Laws, ch.
185, § 11 at 412 [Tex. Ins. Code Ann. art. 1.14-2, § 11, since
repealed]; see also Lloyd's of London v. Walker, 716 S.W.2d 99,
103 (Tex. App. 1986, writ ref'd n.r.e.).