**TEXAS PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION/SOUTHWEST AGGREGATES, INC. and The Alliance Insurance Company of McPherson, Kansas, Appellants,**

v.

**SOUTHWEST AGGREGATES, INC. and The Alliance Insurance Company of McPherson, Kansas/ Texas Property and Casualty Insurance Guaranty Association, Appellees.**

No. 03–98–00107–CV

Court of Appeals of Texas, Austin.

Nov. 30, 1998.

Rehearing Overruled Feb. 4, 1999.

---

Paul D. Carmona, Jordan & Carmona, P.C., Austin, for appellants.

Michael R. Knox, Jo Allison Stasney, Knox & Tollefson, P.C., Dallas, for appellees.

Before Justices JONES, B.A. SMITH, and YEAKEL.*

BEA ANN SMITH, Justice.

Southwest Aggregates, Inc. and the Alliance Insurance Company of McPherson, Kansas ("Alliance")[1] appeal the district court's grant of summary judgment in favor of the Texas Property and Casualty Insurance Guaranty Association[2] (the "Guaranty Association") on the issue of the Guaranty Association's obligation to pay a share of Southwest Aggregates' post–1994 defense costs in a number of lawsuits involving silicosis claims. The district court held that under the Guaranty Act,[3] the Guaranty Association is not required to share in the costs of defending Southwest Aggregates because Southwest Aggregates did not exhaust its right to a complete defense under its policies with Alliance. This appeal presents three main issues: (1) whether an insurer's duty to defend its insured is reduced pro rata when the occurrence for which the insured is sued occurs partially within and partially outside the policy period; (2) whether the right to a defense is one of the rights an insured must exhaust against all solvent insurers before the Guaranty Association's duty to assume the obligations of an impaired insurer is triggered under the Guaranty Act; and (3) whether attorney's fees may be awarded under section 38.001(8) of the Civil Practice and Remedies Code for the Guaranty Associa-

---

* Before Lee Yeakel, former Chief Justice, Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).

1. Although Southwest Aggregates was named as a defendant in the suit filed by the Guaranty Association and has nominally sided with Alliance in this appeal, Alliance is the real party in interest in this case, since the Guaranty Association subrogated Southwest Aggregates' breach of contract claim against Alliance. For the sake of clarity and brevity we will therefore refer to Alliance and Southwest Aggregates (in their legal status as appellees-appellants) simply as "Alliance."

2. The Guaranty Association is "a nonprofit, unincorporated legal entity composed of all member insurers, who must be members of the association as a condition of their authority to transact insurance in [Texas]." Tex. Ins.Code Ann. art. 21.28–C, § 6 (West Supp.1998) ("the Texas Property and Casualty Insurance Guaranty Act").

3. The "Guaranty Act" is the short title of article 21.28–C of the Texas Insurance Code. *See* Tex. Ins.Code Ann. art. 21.28–C, § 1 (West Supp. 1998). One purpose of the Guaranty Act is to "avoid financial loss to claimants or policyholders because of the impairment of an insurer." *Id.* § 2.

tion's subrogated breach of contract claim against Alliance. We will affirm the district court's ruling that the duty to defend is not reduced pro rata, and that the right to a defense is one of the rights an insured must exhaust under coverage from other insurers before the Guaranty Association's statutory obligations are triggered. However, we will reverse and render judgment for the Guaranty Association on the issue of attorney's fees.

## BACKGROUND

Southwest Aggregates sells sand and gravel; the company was incorporated in Texas in 1982 and began business operations the next year. From 1983 to 1985, Southwest Aggregates purchased insurance from Alliance in the form of comprehensive general liability ("CGL") policies. For the next four years, it purchased CGL policies from Employers Casualty Company ("ECC"). All of the policies at issue provide that the insurers have the duty to defend any suit against the insured seeking damages for bodily injury or property damage. In 1987, Southwest Aggregates was sued in a number of lawsuits involving silicosis, each with multiple plaintiffs and defendants. In most cases, the plaintiffs alleged damages caused by exposure to silica over a period of many years.

Because both insurer's policies were clearly triggered,[4] Alliance and ECC agreed to share the legal costs of defending Southwest Aggregates in the silicosis suits on a 50–50 basis. From January 1988 until January 1994, Alliance and ECC both paid their agreed shares of the defense costs. Then ECC was declared insolvent, placed into receivership, and designated an "impaired insurer" by the Texas Commissioner of Insurance. The Guaranty Association thereafter assumed ECC's obligations pursuant to the Guaranty Act. For several months, the Guaranty Association continued to pay ECC's share of the defense costs under a reservation of rights. However, in October 1994 the Guaranty Association notified Alliance that it would no longer contribute to the cost of defending Southwest Aggregates.

The Guaranty Association filed suit against Alliance to recover the defense costs it had paid under a reservation of rights. Alliance counterclaimed for a declaratory judgment that the Guaranty Association was liable for a portion of the defense costs, and both sides filed motions for summary judgment. The trial court denied Alliance's motion and partially granted the motion of the Guaranty Association, holding that it was entitled to $21,525.21 in defense costs. The court ruled that to the extent the ECC policy obligations are "covered claims" as defined in section 5 of the Guaranty Act, section 12(a) of the Act requires that Southwest Aggregates exhaust its rights under the Alliance policies prior to seeking coverage from the Guaranty Association. The court further concluded that ECC's agreement to share defense costs on a 50–50 basis with Alliance did not create a "covered claim" and did not bind the Guaranty Association. Finally, the trial court held that Alliance's refusal to pay 100% of Southwest Aggregates' defense costs constituted a breach of contract for which the Guaranty Association could recover under section 11 of the Guaranty Act by virtue of its right to subrogation. However, the court denied the Guaranty Association's request for attorney's fees incurred in pursuing its claim against Alliance.

In eight of its nine points of error,[5] Alliance challenges the trial court's conclusions: (1) that the duty to defend is not reduced by pro rata apportionment based on the insurer's "time on the risk," and (2) that Southwest Aggregates must exhaust its right to a defense under its policies with Alliance before the Guaranty Association's duty to defend under the ECC policies is triggered. These determinations constitute two of the three central issues in this appeal. The sole basis of the Guaranty Association's appeal forms the third major issue in this case: whether the trial court erred in denying the Guaranty Association's request for attorney's

---

4. For a discussion of the "eight corners" rule regarding when the duty to defend is triggered, see *infra* at 604.

5. Although Alliance labels its assignments of error as "issues" pursuant to the new appellate rules, we will refer to them as points of error to distinguish them from the three issues we view as the substantive questions in this appeal.

fees under section 38.001(8) of the Civil Practice and Remedies Code for its subrogated breach of contract claim. Finally, Alliance seeks attorney's fees under the Declaratory Judgment Act in its ninth point of error.

## DISCUSSION

The standard for reviewing a motion for summary judgment is well established: (1) the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). The function of summary judgment is not to deprive litigants of the right to trial by jury, but to eliminate patently unmeritorious claims and defenses. *See Swilley v. Hughes,* 488 S.W.2d 64, 68 (Tex. 1972).

### Texas Law Does Not Require a Pro Rata Allocation of Defense Costs

In its fourth point of error, Alliance argues that Texas law requires a pro rata allocation of defense costs. However, we believe Alliance has misread the relevant authorities. Texas follows the "eight corners" rule in determining an insurer's duty to defend. *See American Alliance Ins. Co. v. Frito–Lay, Inc.,* 788 S.W.2d 152, 153–54 (Tex.App.—Dallas 1990, writ dism'd). This rule requires the trier of fact to examine only the allegations in the underlying complaint and the insurance policy in determining whether a duty to defend exists. *See id.* The duty to defend is not affected by facts ascertained before suit, developed in the process of the litigation, or by the ultimate outcome of the suit. *See id* at 154; *Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973). Therefore, the duty owed by Alliance and ECC to defend Southwest Aggregates must be determined by looking at the plaintiffs' allegations in the underlying silicosis suits.

Since the silicosis suits allege broad periods of exposure that include both Alliance's two years and ECC's four years of coverage, coverage was triggered under both companies' policies. Alliance argues that the insurer's duty to defend must be apportioned, because the insurer cannot be required to defend claims that fall outside the policies. However, that is not the case here; the silicosis plaintiffs have alleged exposure over decades, and the period of alleged exposure includes the two years covered under Alliance's policies. Thus, the silicosis lawsuits against Southwest Aggregates seek damages for injuries that occurred partially within and partially outside of the policy periods.

The first of the three major issues presented is whether Alliance's duty to defend its insured is reduced because the silicosis claims fall partially outside of Alliance's coverage period. Under Alliance's theory, when coverage under consecutive, non-overlapping policies issued by different insurance companies is triggered by a claim of injury occurring across all the policy periods, each insurer's duty to defend is determined by a ratio of that insurer's "time on the risk" over the total time period for which damage is claimed to have occurred. Thus, if three insurance companies each issued consecutive, non-overlapping two-year policies to the insured for a total of six years, and damages are alleged to have occurred over all six years, each insurer's duty to defend would be reduced to reflect its "time on the risk," its share of the total time period over which injury is claimed. In this example, the time on the risk is two years, so under Alliance's theory, each insurer would have a duty to pay only one-third of the defense costs. The Guaranty Association responds that the duty to defend is absolute because the insurance contract requires the insurer to *defend* the insured, not merely to provide a partial or pro rata defense. While insurers may apportion defense costs among themselves any way they choose, it argues, each insurer whose policy obligations are triggered independently owes the insured a *complete defense.*

The federal courts of appeals have split on the issue of whether the duty to defend may

be reduced pro rata by an insurer's time on the risk. The Sixth Circuit adopted the view now urged by Alliance in *Insurance Co. of North America v. Forty–Eight Insulations, Inc.*, 633 F.2d 1212 (6th Cir.1980), *clarified,* 657 F.2d 814, 816 (6th Cir.), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). The insured in *Forty–Eight Insulations* was an asbestos manufacturer; like Southwest Aggregates, it was subjected to lawsuits alleging exposure to disease-causing particles over many years and across several insurers' policies. *See Forty–Eight Insulations,* 633 F.2d at 1214–15. In that case, the manufacturer had been self-insured for some of the years that workers were exposed to asbestos. *See id.* at 1215. Reasoning that it would be unfair to require an insurer to pay the costs of defending suits that alleged exposure to asbestos over years for which the manufacturer had not purchased any coverage, the court held that defense costs must be borne proportionally among the insurers according to the period of time that they insured against the risk. *See id.* at 1224–25. *Forty–Eight Insulations* thus favored pro rata liability for defense costs over joint and several liability for a complete defense.

However, the D.C. Circuit took the opposite position in *Keene Corp. v. Insurance Co. of North America,* 667 F.2d 1034 (D.C.Cir. 1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982). *Keene* held that once coverage under an insurance policy is triggered, an insurer is liable up to its policy limits, subject to "other insurance" clauses. *See Keene,* 667 F.2d at 1047–48. As the *Keene* court explained: "There is nothing in the policies that provides for a reduction of the insurer's liability if an injury occurs only in part during a policy period." *Id.* at 1048. After determining that each

insurer independently owed a duty to fully indemnify the insured, and noting that the duty to defend is broader than the duty to indemnify, the court held that each insurer was fully liable for defense costs. *See id.* at 1050.

While Alliance urges us to adopt the *Forty–Eight Insulations* rule,[6] the Guaranty Association argues that Texas law follows *Keene.* We agree with the Guaranty Association that Texas has adopted the *Keene* approach. The Texas Supreme Court has quoted *Keene* at length, citing it for the following propositions: (1) that concurrent coverage does not permit an insured to stack the limits of multiple policies that do not overlap, and (2) that the insured may select the policy under which it is to be indemnified. *See American Physicians Ins. Exch. v. Garcia,* 876 S.W.2d 842, 854–55 (Tex.1994). These principles are fully consistent with the notion that each of several insurers on concurrently triggered policies is obligated to provide a full defense to the insured.[7] In addition, this Court has held that an insurer's duty to indemnify its insured is not reduced when there is concurrent coverage among consecutive insurers, because there is nothing in the policies that provides for a reduction of the insurer's liability if an injury occurs only in part during a policy period. *See CNA Lloyds of Tex. v. St. Paul Ins. Co.,* 902 S.W.2d 657, 661 (Tex.App.—Austin 1995, writ dism'd by agr.). While *CNA Lloyds* only decided the issue of allocating liability in the context of an insurer's duty to indemnify, we now hold that the same rule applies to the duty to defend.

*CNA Lloyds* involved an underlying claim of dental malpractice alleged to have occurred over a period of two years. *See CNA*

---

**6.** Although it relies on the *Forty–Eight Insulations* rule, Alliance is only seeking here to reduce its pro rata liability to one-half, under the terms of its 50–50 cost-sharing agreement with ECC.

**7.** Alliance argues that the supreme court expressly approved pro rata sharing of the defense duty in *Garcia.* However, the issue in *Garcia* was whether the malpractice insurance carrier breached its duty to defend its insured or its *Stowers* duty to settle. *See Garcia,* 876 S.W.2d at 843. In the passage relied on by Alliance, the court merely stated that the carrier did not

breach its duty to defend when it defended the insured under a joint defense agreement to which the insured did not object. *See id.* at 848. We do not read this language from *Garcia* to approve pro rata sharing of the defense duty *as it pertains to the rights of the insured against the insurer* any more than did this Court's recognition in *CNA Lloyds* that such a scheme exists to serve as a method of apportioning liability among insurers. *See CNA Lloyds of Tex. v. St. Paul Ins. Co.,* 902 S.W.2d 657, 661 (Tex.App.— Austin 1995, writ dism'd by agr.).

*Lloyds,* 902 S.W.2d at 658. CNA and St. Paul had each provided malpractice insurance to the defendant dentist under consecutive, non-overlapping policies; the CNA policy was limited to $1,000,000 per claim, while the St. Paul policy was capped at $100,000. *See id.* After St. Paul contributed its $100,000 policy limit toward a joint settlement with the plaintiff for $262,500, it sought reimbursement from CNA based on an "other insurance" clause in its policy. *See id.* That clause provided that if a claim covered under the St. Paul policy was also covered under another policy, St. Paul would only contribute its pro rata share to the total amount of insurance covering the claim. *See id.* The trial court granted summary judgment for St. Paul, holding that it was entitled to recover from CNA the difference between the $100,000 it paid toward the settlement and its pro rata share of the coverage. *See CNA Lloyds,* 902 S.W.2d at 658.

On appeal, this Court upheld St. Paul's right to recover under the "other insurance" clause. *See id.* at 662. We looked to the D.C. Circuit's opinion in *Keene* and held that, once triggered, both the St. Paul and CNA policies provided full coverage up to policy limits for the plaintiff's entire claim. *See id.* at 661. Our conclusion was based on the language of the insurance contract. We noted that "the insurance policies ... do not provide for a reduction of the insurer's liability limits if an injury only partially occurs during a policy period. Instead, both policies contract to pay the sums the insured becomes legally obligated to pay, not merely a pro rata portion of that amount." *Id.* Of course, "[w]hen more than one policy applies to a loss, the 'other insurance' provisions provide a scheme by which the insurers' liability is to be apportioned." *Id.* (quoting *Keene,* 667 F.2d at 1050, and citing *Garcia,*

876 S.W.2d at 855 ("Once the applicable limit [of coverage] is identified, all insurers whose policies are triggered must allocate funding of the indemnity limit among themselves according to their subrogation rights.")). But the mechanism of pro rata apportionment among insurers does not affect the contractual relationship between insurer and insured that requires the insurer to provide full indemnification.

■ While *CNA Lloyds* involved the insurer's duty to indemnify, the Guaranty Association argues that its reasoning applies with equal force to the duty to defend. The duty to defend is broader than the duty to indemnify. *See E & L Chipping Co., Inc. v. Hanover Ins. Co.,* 962 S.W.2d 272, 274 (Tex. App.—Beaumont 1998, no pet.); *Colony Ins. Co. v. H.R.K., Inc.,* 728 S.W.2d 848, 850 (Tex.App.—Dallas 1987, no writ). In keeping with our reasoning in *CNA Lloyds,* we agree that when a claim falls partially within and partially outside of a coverage period, the insurer's duty is to provide its insured with a complete defense. This is because the contract obligates the insurer to *defend* its insured, not to provide a pro rata defense. *Cf. CNA Lloyds,* 902 S.W.2d at 661.

Alliance argues that this conclusion is contrary to Texas law, citing *Gulf Chemical & Metallurgical Corp. v. Associated Metals & Minerals Corp.,* 1 F.3d 365 (5th Cir.1993) and *Lafarge Corp. v. Hartford Casualty Insurance Co.,* 61 F.3d 389 (5th Cir.1995). However, the federal panels in both cases were essentially predicting how Texas courts would decide the issue of the extent of the duty to defend; neither opinion cites any Texas case on point.[8] Furthermore, *Gulf Chemical* and *Lafarge* rely on *Forty–Eight Insulations*[9] for the proposition that where defense costs can be readily apportioned among insurers, each owes only a pro rata

---

8. The *Gulf Chemical* panel noted: "To our knowledge, no Texas court has ruled on whether defense costs are apportionable when a ready basis for apportionment is apparent." *See Gulf Chemical,* 1 F.3d at 372. *Lafarge* cites a *federal* case for the proposition that an insurer may apportion defense costs when there is a clear distinction between covered and non-covered claims. *See Lafarge,* 61 F.3d at 398 (citing *E.E.O.C. v. Southern Publishing Co.,* 894 F.2d 785, 791 (5th Cir.1990)).

9. *Lafarge* cites *Forty–Eight Insulations* only as support for the statement that apportionment of costs is not feasible in some circumstances. *See Lafarge,* 61 F.3d at 398. However, the *Southern Publishing* case, which the *Lafarge* court cites for the theory that an insurer may apportion defense costs, does rely directly on *Forty–Eight Insulations. See Southern Publishing,* 894 F.2d at 791.

portion of those costs based on its time on the risk. We believe that *Forty–Eight Insulations* and its progeny are irreconcilable with *Keene's* holding that each insurer is fully liable to the insured for defense costs.[10] *See Keene*, 667 F.2d at 1050.

Today we hold that under Texas law, an insurer's duty to defend its insured on a claim occurring partially within and partially outside of the policy period is not reduced pro rata by the insurer's "time on the risk" or by any other formula. While the cases cited by Alliance demonstrate that some support exists for the contrary viewpoint, case-law from the Fifth Circuit and from state courts in other jurisdictions is not binding on this Court. We believe that our earlier holding in *CNA Lloyds* forecloses the "time on the risk" approach advanced by Alliance. The fourth point of error is overruled.

### Consecutive Policies, Concurrent Coverage

■ In its third point of error, Alliance claims that the exhaustion statute does not apply in this case because the policies sold to Southwest Aggregates by Alliance and ECC "are consecutive and not concurrent; i.e., there is no overlapping coverage." An amicus brief filed by Transportation Insurance Company ("Transportation") on Alliance's behalf develops this argument by stating the rule that the duty to defend arises out of the contractual agreement between the insurer and the insured, and notes that an insurer is required to defend only those cases within its policy coverage. *See Fidelity & Guar. Ins. Underwriters v. McManus*, 633 S.W.2d 787, 788 (Tex.1982). Alliance and Transportation also argue that *CNA Lloyds* is inapposite here because the parties in that case stipulated that the coverage provided by the con-

secutive policies was concurrent, and that they therefore "stipulated away the issue."

It is true that the coverage periods of the Alliance and ECC policies are consecutive and do not overlap. However, it does not follow that there cannot be *concurrent* coverage from *consecutive* policies. Black's Law Dictionary defines "concurrent insurance" as "insurance coverage under two or more similar policies *of varying dates and amounts.*" Black's Law Dictionary 803 (6th ed.1990) (emphasis added). Numerous claims based on events occurring over long periods of time—such as the underlying silicosis claims in this case—may simultaneously trigger coverage from two or more policies even though there is no overlap in the policy dates. The parties in *CNA Lloyds* did not "stipulate away the issue" because it is clear that the claim in that case, as in the present one, fell at least partially within the policy periods of two consecutive policies. It is hardly surprising that the parties stipulated to concurrent coverage in a situation where concurrent coverage was undoubtedly triggered. We therefore reject Alliance's attempt to distinguish *CNA Lloyds* on the basis that concurrent coverage was "stipulated" in that case, and overrule the third point of error.

### The Exhaustion Provision of the Guaranty Act

■ The second major issue in this appeal is whether the right to a defense is one of the rights an insured must exhaust against any solvent insurers before the Guaranty Association has a duty under the Guaranty Act to assume the obligations of an impaired insurer. In its first point of error, Alliance argues that section 8(b)[11] of the Guaranty Act re-

---

10. Surprisingly, the *Gulf Chemicals* court cites *Keene* as *approving* pro rata apportionment of defense costs. *See Gulf Chemical*, 1 F.3d at 372 n. 4. The *Keene* court did note: "Nothing we now hold should be read to prevent an insurer from sharing the costs of defense with other insurers under the 'other insurance' clauses or under the doctrine of contribution." *See Keene*, 667 F.2d at 1050 n. 37. However, as discussed above, determining what method should be used to apportion liability *among insurers* is a distinct issue from whether pro rata apportionment alters the insurer's duty to indemnify or defend *its insured*.

11. Section 8(b) provides:

The [guaranty] association shall undertake to discharge the policy obligations of the impaired insurer, including the duty to defend insureds under a liability policy, to the extent that the policy obligations are covered claims under this Act.... The [guaranty] association is considered the insurer to the extent of its obligation on the covered claims and to that extent has all rights, duties, and obligations of the impaired insurer as if the insurer had not become impaired.

Act of June 17, 1993, 73d Leg., R.S., ch. 685, § 9.07, 1993 Tex. Gen. Laws 2636 (West) (current version at Tex. Ins.Code Ann. art. 21.28–C, § 8(b) (West Supp.1998)).

quires the Guaranty Association to provide a defense to Southwest Aggregates. In its second point of error, Alliance asserts that the version of section 12(a) of the Guaranty Act applicable to this case does not suspend the Guaranty Association's duty to defend Southwest Aggregates. The Guaranty Association acknowledges its defense obligation under section 8(b), but argues that section 12's exhaustion provision requires Southwest Aggregates to fully exhaust its right to a defense before the Guaranty Association assumes its obligations under section 8(b). We turn now to the text of the exhaustion provision.

Section 12 of the Guaranty Act currently states, in pertinent part:

A person who has a claim against an insurer under any provision in an insurance policy other than a policy of an impaired insurer that is also a covered claim shall exhaust first the person's rights under the policy, including any claim for indemnity or medical benefits under any workers' compensation, health, disability, uninsured motorist, personal injury protection, medical payment, liability, or other policy, *and the right to defense under the policy.*

Tex. Ins.Code Ann. art. 21.28–C, § 12(a) (West Supp.1998) (emphasis added). However, in the 1993 version of this statute applicable to the present dispute, the italicized text was not part of the statute.[12] The Guaranty Association argues that the legislature added the italicized text in a 1995 amendment solely to clarify that the duty to defend is one of the rights an insured must exhaust before the Guaranty Association becomes obligated to the insured under section 8(b). Alliance responds that the 1995 amendment adding the italicized text was effected in order to change the exhaustion provision, not merely to clarify it.

■ We begin by observing that the duty of the court is to construe a statute as written and ascertain the legislature's intent from the language of the act. *See Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985). Both the original and amended versions of the exhaustion provision contained in section 12 require the insured to exhaust its "rights under the policy" before the Guaranty Association's duties to the insured are triggered. Since the right to a defense is one of the rights of an insured under a CGL policy, the plain language of the statute dictates that the right to a defense should be included among the "rights under the policy" that must be exhausted by the insured.[13]

Alliance relies on the precept *expressio unius est exclusio alterius,*[14] arguing that since the right to a defense was not among the rights specifically listed by example in the 1993 version of the exhaustion provision, the legislature did not intend to include it among the rights an insured must exhaust before the Guaranty Association's obligations become ripe. However, we observe that the maxim of *expressio unius est exclusio alterius* is not of legal origin and requires great caution in its application. *See Blankenship v. Highlands Ins. Co.,* 594 S.W.2d 147, 150 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). Furthermore, we disagree that the legislature used the word "including" to imply an exhaustive list of rights. As a leading authority on legal usage has observed:

**Including** is sometimes misused for *namely.* But it should not be used to introduce an exhaustive list, for it implies that the list is only partial. In the words of one federal court, "It is hornbook law that the use of the word *including* indicates that the specified list ... is illustrative, not exclusive." *Puerto Rico Maritime Shipping Auth. v. I.C.C.,* 645 F.2d 1102, 1112 n. 26 (D.C.Cir.1981).

---

**12.** *See* Act of June 17, 1993, 73d Leg., R.S., ch. 685, § 9.15, 1993 Tex. Gen. Laws 2638 (West).

**13.** The legislative history of House Bill 2960, which produced the 1995 amendment, supports this conclusion. In a May 18, 1995 hearing of the Senate Economic Development Committee, Senator Ken Armbrister stated that House Bill 2960 provides "a *clarification* of an insured's

obligation to exhaust their right to a defense under policies of insurance." Tex. Sen. Economic Dev. Comm. Minutes, 74th Leg., R.S. (May 18, 1995) (emphasis added).

**14.** Black's Law Dictionary translates the similar phrase *inclusio unius est exclusio alterius* as "the inclusion of one is the exclusion of the other." Black's Law Dictionary 763 (6th ed.1990).

Bryan A. Garner, *A Dictionary of Modern Legal Usage* 431–32 (2d ed.1995). The trial court properly concluded that the 1995 amendment clarified and did not change the statute, and that the right to a defense was one of the rights an insured had to exhaust under the 1993 version of the exhaustion provision that applies to this case. Alliance's first two points of error are overruled.

### The Guaranty Association's Right to Subrogation

In its fifth point of error, Alliance argues that section 11 of the Guaranty Act does not give the Guaranty Association a right of subrogation to seek monies from Alliance. Section 11 states, in pertinent part:

> A person recovering under this Act is considered to have assigned to the [Guaranty Association] ... the person's rights to recover for the occurrence made the basis of the claim under this Act under any policy of insurance issued by an unimpaired insurer to the extent of the person's recovery from the [Guaranty Association]. The [Guaranty Association] may pursue any such claims to which it is subrogated under this provision in its own name or in the name of the person recovering under this Act.

Tex. Ins.Code art. 21.28–C, § 11(a) (West Supp.1998). Alliance challenges the trial court's award under section 11 on three grounds. We will examine each argument separately.

First, Alliance claims that the Guaranty Association cannot rely on an exhaustion requirement, and that the amount of money it recovered in the trial court (half of the defense costs at issue) is less than it would have been required to pay under the pro rata allocation required by *Gulf Chemical*. This assertion is dependent on the claims raised in Alliance's second and fourth points of error. We have held that section 12(a) of the Guaranty Act requires an insured to exhaust its right to a defense; furthermore, we have rejected Alliance's claim that *Gulf Chemical* correctly states Texas law on the extent of an insurer's duty to defend. This argument fails for the same reasons.

■ Next, Alliance asserts that the right "to recover for the occurrence made the basis of the claim under this Act" includes only the right to indemnity, not the right to a defense. The Guaranty Association responds that the insured's right to defense costs is a "right to recover" under the policy issued by Alliance. While it is true that the "occurrence made the basis of the claim" is the underlying event that triggered the lawsuit, the policyholder's right to recover defense costs is grounded in the same insurance contract that creates the right to recover indemnity. Thus, Southwest Aggregates' right to defense costs is a "right to recover" related to the occurrence under the CGL policy issued by Alliance. When the Guaranty Association paid half of the defense costs following Alliance's refusal to provide a complete defense, Southwest Aggregates was considered to have assigned to the Guaranty Association its breach of contract rights against Alliance to the extent of Southwest Aggregates' recovery from the Guaranty Association.

■ Finally, Alliance argues that if the Guaranty Association had no obligation to make payments because the other policies had not been exhausted, the defense costs it paid were "volunteered." We rejected a similar argument in *CNA Lloyds*. In that case, St. Paul's had contributed its policy limit of $100,000 toward a joint settlement of $262,-500; CNA, the insurer on a policy with a $1,000,000 limit, contributed $162,500. *See CNA Lloyds*, 902 S.W.2d at 658. We rejected CNA's assertion that St. Paul had voluntarily contributed to the settlement amount because, pursuant to its insurance policy, St. Paul had a contractual duty to defend any claim against the insured. *See id.* at 661. Although *CNA Lloyds* did not involve the Guaranty Act, its reasoning applies here: the defense costs paid by the Guaranty Association under a reservation of rights were not "volunteer payments."

Furthermore, we believe that this result is consistent with the purpose of the Guaranty Act. In a situation where concurrent coverage is triggered among consecutive policies and one of the insurers becomes insolvent, the insured will demand a defense from the solvent carriers. If the solvent carriers re-

fuse to pay more than a pro rata share of the defense costs, there are three possible outcomes: (1) the Guaranty Association refuses to pay the remaining costs, thereby forcing the insured to bear the costs and later sue to recover them; (2) the Guaranty Association pays the unpaid defense costs out of the Guaranty Fund, thereby relieving the solvent insurers of their obligation to provide a complete defense; or (3) the Guaranty Association pays the unpaid defense costs and, by subrogation under section 11(a) of the Guaranty Act, asserts the insured's right to recover those costs against the solvent carriers. We have rejected the notion that the Guaranty Act relieves the solvent insurers of their obligation to provide a complete defense. It would be inconsistent with the purposes of the Guaranty Act to require the insured to bear defense costs and later sue to recover them. The trial court did not err in allowing the Guaranty Association to recover the defense costs it paid under the subrogation mechanism provided by section 11(a) of the Guaranty Act. We overrule the fifth point of error.

### An Agreement to Share Defense Costs Is Not a "Covered Claim" Under the Guaranty Act

 In its sixth point of error, Alliance asserts that section 8(b) of the Guaranty Act binds the Guaranty Association to the cost-sharing agreement between ECC and Alliance. Section 8(b) provides, in pertinent part: "The [Guaranty Association] is considered the insurer to the extent of its obligation on the covered claims and to that extent has all rights, duties, and obligations of the impaired insurer as if the insurer had not become impaired." Tex. Ins.Code Ann. art. 21.28–C, § 8(b) (West Supp.1998). Alliance argues that the cost of Southwest Aggregates' defense is a "covered claim" for which ECC had an obligation to pay, and that therefore the Guaranty Association must undertake that obligation to provide Southwest Aggregates a defense as if ECC had not become impaired. The trial court rejected Alliance's argument in its final judgment, stating:

The agreement to share defense costs between [ECC] and [Alliance] does not cre-

ate a "covered claim" as defined by Tex. Ins.Code art. 21.28–C § 5(8), and does not bind the [Guaranty Association] to share in the defense of Southwest Aggregates. The agreement is not a policy obligation, and is not a "covered claim."

. . . .

Alliance has a subrogation claim against [ECC], in Receivership, for the amount of defense costs that, but for the insolvency of [ECC], would have been paid by [ECC]. However, Tex. Ins.Code art. 21.28 contains claim filing requirements and deadlines, and therefore Alliance must pursue its subrogation claim as a general creditor under the provisions of Tex. Ins.Code art. 21.28, and in the receivership proceedings against [ECC].

The Guaranty Act defines "covered claim" as "an unpaid claim of an insured or third-party liability claimant that arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Act applies . . . ." Tex. Ins.Code Ann. art. 21.28–C, § 5(8) (West Supp.1998). We agree with the trial court's conclusion that the cost-sharing agreement is not a "covered claim" under this definition. The agreement is not a policy obligation, only a pact between two solvent insurers who jointly owe a duty to defend their common insured. An obligation to another *insurer* is not an obligation to the *insured* under the policy. Alliance has a claim for its agreed share of the defense costs against the receiver of ECC, not against the Guaranty Association. The sixth point of error is overruled.

### Estoppel

 In its seventh point of error, Alliance argues that the Guaranty Association should be estopped to deny ECC's agreement to share defense costs with Alliance. The elements of estoppel are: (1) a promise; (2) foreseeability of reliance by the promisor; and (3) substantial reliance by the promisee to its detriment. *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983). Estoppel does not apply here because there has been no detrimental reliance by any party. Alliance concedes its duty to defend Southwest Aggregates; the argument raised in its fourth point of error was, however, that it should

only be responsible for half of the defense costs based on its agreement with ECC. Since Alliance paid for only half of the defense costs—costs for which it admits it is liable—it has not detrimentally relied in any way on ECC's promise to pay the other half. We overrule Alliance's seventh point of error.

### Supplemental Summary Judgment Evidence

█ In its eighth point of error, Alliance claims that the trial court abused its discretion in allowing the Guaranty Association to file supplemental summary judgment evidence of additional damages after the hearing, after the court had ruled on the motions, and prior to signing the judgment. The Guaranty Association filed its motion for summary judgment on September 23, 1997; Alliance filed its response and cross-motion for summary judgment on October 17. The trial court heard initial argument by the parties on October 20, then requested that the parties file additional briefing and any supplemental summary judgment evidence necessary. The Guaranty Association filed its supplemental briefing and evidence on November 12, and Alliance filed additional briefing and evidence on December 19.

The trial court heard argument on the motions on January 20, 1998. At that hearing, the court ruled from the bench in favor of the Guaranty Association, and denied Alliance's cross-motion. On February 11, the Guaranty Association filed a motion for leave to supplement its summary judgment evidence and to amend the court's summary judgment ruling, seeking to introduce the affidavit of Laura Cox regarding additional defense costs paid by the Guaranty Association. By this evidence, the Guaranty Association sought to increase the damages awarded by an additional $6,929.82. Alliance timely filed its objections and response to the motion for leave on February 23. However, on February 26, the trial judge wrote to counsel and stated that he had signed and filed the proposed order granting leave. The judge prefaced his discussion with the statement "I have heard nothing from [counsel for Alliance]," indicating his belief that Alliance had failed to object.

Alliance argues that the trial court abused its discretion by allowing the Guaranty Association to file the supplemental summary judgment evidence of defense costs.

█ A court may allow evidence to be filed after the hearing on a summary motion and before summary judgment is rendered. See Tex.R. Civ. P. 166a(c); Beavers v. Goose Creek Consol. I.S.D., 884 S.W.2d 932, 935 (Tex.App.—Waco 1994, writ denied). The court's decision to grant such permission is discretionary. See Beavers, 884 S.W.2d at 935. The test for abuse of discretion is whether the trial court acted without reference to any guiding principles or whether it acted arbitrarily or unreasonably. See Yowell v. Piper Aircraft Corp., 703 S.W.2d 630, 634–35 (Tex.1986). An appellate court will not substitute its judgment for that of the trial court, and will not reverse a discretionary ruling unless the record clearly shows that the trial court disregarded a party's rights. See id. at 635.

Alliance offers no specific instances of an abuse of discretion by the trial court, other than to suggest that it should have denied the motion for leave upon notice of proper objection. Alliance cites to several cases holding that evidence filed beyond the deadline was too late. See Nicholson v. Memorial Hosp. Sys., 722 S.W.2d 746 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); Velde v. Swanson, 679 S.W.2d 627, 630 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); Barrow v. Jack's Catfish Inn, 641 S.W.2d 624, 625 (Tex.App.—Corpus Christi 1982, no writ). However, these cases merely state that depositions filed after a motion for summary judgment was heard or granted are not properly before the trial court, and are not considered part of the appellate record. See Nicholson, 722 S.W.2d at 749; Velde, 679 S.W.2d at 630; Barrow, 641 S.W.2d at 625. Furthermore, all three cases deal with untimely summary judgment evidence filed without leave of court. Because the trial court signed an order allowing the Guaranty Association to supplement its affidavit regarding the amount of defense costs paid on behalf of Southwest Aggregates, Alliance must demonstrate that the court abused its

discretion by allowing the supplemental filing.

Alliance has not met its burden in this respect. While the trial judge's apparent observation that the motion to grant leave was unopposed may have been mistaken, we do not think the court abused its discretion in granting the motion. There would be little point in denying the additional costs sought in the motion for leave to supplement, granting a final summary judgment on an incomplete amount, and then requiring the Guaranty Association to recover the missing costs in a separate judicial proceeding. The trial court did not abuse its discretion. We overrule Alliance's eighth point of error.

### Attorney's Fees

■ Both sides appeal the trial court's denial of their respective requests for attorney's fees in this case. The Guaranty Association requested attorney's fees under section 38.001(8) of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8) (West 1986). Section 38.001 provides: "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: ... (8) an oral or written contract." *Id.* § 38.001. The Texas Supreme Court has awarded attorney's fees under section 38.001 on a suit for breach of an insurance policy. *See Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 667 (Tex.1987); *see also Dairyland County Mutual Ins. v. Childress,* 650 S.W.2d 770, 776 (Tex.1983) (upholding fee award under Tex. Rev.Civ. Stat. Ann. art. 2226); *Chitsey v. National Lloyd's Ins. Co.,* 698 S.W.2d 766, 771–72 (Tex.App.—Austin 1985) (awarding attorney's fees to insured upon finding that insurance company breached contract), *aff'd,* 738 S.W.2d 641 (Tex.1987).

■ Alliance urges that this case falls under one of the exceptions in section 38.006 that disallows attorney's fees under chapter 38. *See* Tex. Civ. Prac. & Rem.Code Ann. § 38.006 (West 1997). Section 38.006 states that chapter 38 does not apply to a contract issued by an insurer that is subject to any of the following provisions of the Insurance Code: article 3.62 or 3.62–1; article 21.21 or 21.21–2; or chapter 9. *See id.* As several Texas appellate courts have noted, the purpose of the exceptions set forth in section 38.006 (and its predecessor, article 2226)[15] was to exclude only those actions for which attorney's fees were already recoverable under another statute. *See Whitehead v. State Farm Mut. Auto. Ins. Co.,* 952 S.W.2d 79, 87 (Tex.App.—Texarkana 1997, no writ) (op. on reh'g) (citing *Prudential Ins. Co. of Am. v. Burke,* 614 S.W.2d 847, 850 (Tex.Civ.App.—Texarkana), *writ ref'd n.r.e.,* 621 S.W.2d 596 (Tex.1981)); *see also Novosad v. Mid–Century Ins. Co.,* 881 S.W.2d 546, 552 (Tex.App.—San Antonio 1994, no writ); *Hochheim Prairie Farm Mut. Ins. Ass'n v. Burnett,* 698 S.W.2d 271, 278 (Tex.App.—Fort Worth 1985, no writ). For this reason, Texas courts have construed section 38.006 and its precursor to preclude an award of attorney's fees *only* for those claims against insurance companies which allow for attorney's fees under other statutes, i.e., when the recovery sought is based on an insurance theory for which attorney's fees are already available.[16] Therefore, when the suit against the insurer is an action on the insurance contract, section 38.006 does not prevent an award of attorney's fees otherwise allowed under section 38.001(8). *See Barnett,* 723 S.W.2d at 667; *Whitehead,* 952 S.W.2d at 87 (op. on reh'g); *Novosad,* 881 S.W.2d at 552; *American Gen.*

---

**15.** *See* Rev. Civ. Stat. Ann. art. 2226 (West 1971), *repealed by* Acts 1985, 69th Leg., ch. 959, § 9(1), eff. Sept. 1, 1985.

**16.** *See Whitehead,* 952 S.W.2d at 87 (construing § 38); *Novosad v. Mid–Century Ins. Co.,* 881 S.W.2d 546, 552 (Tex.App.—San Antonio 1994, no writ) (§ 38); *American Gen. Fire & Cas. Co. v. McInnis Book Store, Inc.,* 860 S.W.2d 484, 490–91 (Tex.App.—Corpus Christi 1993, no writ) (§ 38); *Hochheim Prairie Farm Mut. Ins. Ass'n v. Burnett,* 698 S.W.2d 271, 278 (Tex.App.—Fort Worth 1985, no writ) (art. 2226); *State Farm*

*Mut. Auto. Ins. Co. v. Clark,* 694 S.W.2d 572, 575 (Tex.App.—Corpus Christi 1985, no writ) (art. 2226); *Vanguard Ins. Co. v. McWilliams,* 680 S.W.2d 50, 52 (Tex.App.—Austin 1984, writ ref'd n.r.e.) (art. 2226); *Aetna Fire Underwriters Ins. Co. v. Southwestern Eng'g Co.,* 626 S.W.2d 99, 103 (Tex.App.—Beaumont 1981, writ ref'd n.r.e.) (art. 2226); *Prudential Ins. Co. v. Burke,* 614 S.W.2d 847, 850 (Tex.Civ.App.—Texarkana 1981) (art. 2226), *writ ref'd n.r.e.,* 621 S.W.2d 596 (Tex. 1981).

*Fire & Cas. Co. v. McInnis Book Store, Inc.,* 860 S.W.2d 484, 490–91 (Tex.App.—Corpus Christi 1993, no writ).

The *Whitehead* court rejected the argument that section 38.006 should be construed to mean that if any insurance company could be liable under the listed portions of the Insurance Code, then attorney's fees are unavailable for a simple suit on the insurance contract. *See Whitehead,* 952 S.W.2d at 88 (op. on reh'g). In the present case, the Guaranty Association did not bring suit under any of the provisions set forth in section 38.006; instead, it relied on Southwest Aggregates' subrogated breach of contract claim for its cause of action. The district court ruled that Alliance breached its contract with Southwest Aggregates when it refused to pay more than fifty percent of Southwest Aggregates' defense costs. We hold that the suit does not fall within any of the exclusions under section 38.006, and that the Guaranty Association is entitled to attorney's fees under section 38.001(8). *See Whitehead,* 952 S.W.2d at 89 (concluding that trial court erred in refusing to award attorney's fees to insureds under section 38.001(8)); *Barnett,* 723 S.W.2d at 667 (allowing recovery of attorney's fees under section 38.001(8) for suit on insurance policy); *Novosad,* 881 S.W.2d at 552 (same).

The Texas Supreme Court's opinion in *Dairyland County Mutual Insurance Co. v. Childress,* 650 S.W.2d 770 (Tex.1983), does not compel a different result. In *Dairyland,* the supreme court affirmed the court of appeals' award of attorney's fees, holding that a county mutual insurance company was not exempt from attorney's fees under article 2226, the predecessor to section 38.006. *See id.* at 775–76. Its opinion states:

> Art. 2226 does not apply to contracts of certain insurors who are identified in those sections of the Insurance Code enumerated in Art. 2226. Dairyland is a county mutual insurance company and as such is not one of the insurors exempt from the provision of Art. 2226. Therefore, it is not exempt from a claim for attorney's fees pursuant to Art. 2226.

*Id.* at 775 (citation omitted). The *Dairyland* court did *not* hold that article 2226 always exempts insurers from attorney's fees regardless of the nature of the underlying cause of action. The meaning of its statement that article 2226 "does not apply to contracts of certain insurors" is somewhat unclear; however, any doubt that the attorney's fee exception created by section 38.006 applies only to *causes of action* brought under the enumerated sections of the Insurance Code was resolved three years later in *Barnett,* where the supreme court awarded attorney's fees under section 38.001 on a suit for breach of an insurance policy. *See Barnett,* 723 S.W.2d at 667. Furthermore, the supreme court's earlier endorsement of *Burke* indicates that it approved the court of appeals' reasoning that the purpose of the exclusions in article 2226 was to exempt the recovery of attorney's fees only in actions for which attorney's fees were already recoverable another statute. *See Burke,* 614 S.W.2d at 850, *writ ref'd n.r.e.,* 621 S.W.2d 596 (Tex. 1981) ("The Court of Civil Appeals has correctly decided the case."). The fact that the supreme court has never overruled its decisions in *Barnett* or *Burke,* together with more recent cases from the courts of appeals such as *Whitehead, Novosad,* and *American General,* shows that Texas law continues to support the award of attorney's fees in suits brought on an insurance contract unless the cause of action is one of the specifically enumerated exceptions set forth in section 38.006.

Alliance argues that we should follow the view of the Fifth Circuit, which has interpreted *Dairyland* as implying that any *insurer* who is subject to the portions of the Insurance Code enumerated in section 38.006, as opposed to *causes of action* based on those portions, is exempt from the payment of attorney's fees. *See Lafarge,* 61 F.3d at 402 ("[*Dairyland*] implies that an insurer that falls within the provisions of section 38.006 is exempt from payment of attorney's fees and that only those insurers who do not qualify for the exemption are subject to the payment of attorney's fees."); *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.,* 975 F.2d 1130, 1133–34 (5th Cir.1992). *Lafarge* acknowledged that "Texas appellate courts continue to award attorney's fees to

insureds who successfully prosecute breach of contract suits against their insurers." *Lafarge*, 61 F.3d at 403. However, the *Lafarge* court found itself constrained to follow *Bituminous Casualty*, citing the policy that "one panel may not overrule the decision, *right or wrong*, of a prior panel, in the absence of an en banc reconsideration or superseding decision of the Supreme Court." *Id.* (quoting *Bertram v. Freeport McMoran*, 35 F.3d 1008, 1016–17 (5th Cir.1994) (emphasis added)); *see also Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1057 (5th Cir.1996) (*Bituminous Casualty II*) ("Correct or not, we are bound by our prior panel decision."). We agree with the *Whitehead* court that the Fifth Circuit's reasoning in its original *Bituminous Casualty* opinion is flawed in several respects.

First, the *Bituminous Casualty* court misinterpreted the above-quoted language from *Dairyland*. The court recognized that at the time of its holding, *Burke* and five other appellate decisions had concluded that the exceptions under section 38.006 were only meant to apply when one of the enumerated provisions from the Insurance Code allowing for attorney's fees was relied on as a theory of recovery.[17] *See Bituminous Casualty*, 975 F.2d at 1133. The court did not provide any reason for its disagreement with these decisions; it merely noted that the Texas Supreme Court had not expressly approved them. *See id.* Furthermore, the *Bituminous Casualty* court did not offer any reasoning for its conclusion that section 38.006 should apply to make attorney's fees unavailable in a breach of contract suit over an insurance policy; it simply cited *Dairyland*. However, *Dairyland* held only that because a mutual insurance company was not an insurer under the terms of the Insurance Code

provisions, it could not be exempt from attorney's fees under section 38.006. *See Dairyland*, 650 S.W.2d at 775. The court did not state that section 38.006 always exempts insurers from attorney's fees. Finally, it is well established under Texas law that the purpose of the exceptions under section 38.006 is to exclude attorney's fees in suits on an insurance contract only when attorney's fees are already statutorily provided under an insurance theory of recovery.[18] We therefore reject the *Bituminous Casualty* court's interpretation of *Dairyland*. Because it relies on *Bituminous Casualty*, *Lafarge* also wrongly decided the attorney's fee issue. The Fifth Circuit has simply ignored the interpretation Texas courts have consistently given to section 38.006.[19]

*Lafarge* also overlooks Texas cases that are on point. The *Lafarge* court stated that it was unable to find any post-*Bituminous Casualty* cases from a Texas court that clearly addressed the attorney's fee issue in that case, namely the applicability of section 38.006. *See Lafarge*, 61 F.3d at 403. However, in *Novosad*, which was decided two years after *Bituminous Casualty* and more than a year before *Lafarge*, the San Antonio Court of Appeals held that the insured's suit against her insurer for breach of the insurance contract did not fall within any of the exclusions under section 38. *See Novosad*, 881 S.W.2d at 552. The *Novosad* court also cited *Burke* for the proposition that the purpose of the exclusions under article 2226 was to exclude only those actions under which attorney's fees were already recoverable under another statute. One year before *Novosad*, *American General* rejected the argument that section 38.006 precluded an award of attorney's fees in an insured's suit on its

---

**17.** Although the *Bituminous Casualty* court described *Burke* as deciding the issue under section 38.001, the *Burke* case actually involved article 2226, the predecessor of chapter 38.

**18.** *See Whitehead*, 952 S.W.2d at 87 (op. on reh'g); *Novosad*, 881 S.W.2d at 552; *American General*, 860 S.W.2d at 490–91; *Hochheim Prairie Farm*, 698 S.W.2d 271 at 278; *Burke*, 614 S.W.2d at 850.

**19.** The *Bituminous Casualty* court also erred in stating that the only time the Texas Supreme

Court had addressed the issue was in *Dairyland*. As *Whitehead* points out, the supreme court not only denied review in *Burke*, but took the unusual step of doing so in a published opinion stating that the court of appeals correctly decided the case. *See Burke*, 621 S.W.2d at 596. We would only add that *Barnett*, in which the supreme court ordered an award of attorney's fees under section 38.006 in a suit on an insurance policy, was decided four years after *Dairyland*. *See Barnett*, 723 S.W.2d at 667. *Bituminous Casualty* does not even cite *Barnett*.

policy with a fire insurance company, noting that "courts have consistently construed the precursor to § 38.006 to preclude a general award of attorney's fees only for those claims against insurance companies which allow for attorney's fees under other statutes." *American General*, 860 S.W.2d at 490–91.

Alliance's position gains little support from the supreme court's decision in *Travelers Indemnity Co. v. Mayfield*, 923 S.W.2d 590 (Tex.1996). *Mayfield* involved the district court's order appointing an attorney to represent a workers' compensation claimant and directing the carrier to pay the claimant's attorney's fees. *See id.* at 592. The supreme court conditionally granted a writ of mandamus because it agreed with the carrier's argument that the trial court abused its discretion and caused irreparable harm by requiring the carrier to pay for the claimant's attorney. *See id.* at 594–95. In dicta, the court stated:

> Specifically, [the claimant] does not claim that the workers' compensation insurance contract between her employer and Travelers authorizes her recovery of attorney's fees. Indeed, she cannot do so, as section 38.001 of the Texas Civil Practice and Remedies Code, which generally authorizes recovery of attorney's fees for suits on a written contract, does not apply to insurance contracts subject to article 21.21 of the Texas Insurance Code. The compensation policy issued by Travelers falls within this exception.

*Id.* at 593 (citations omitted). As in *Dairyland*, the meaning of the court's statement is somewhat opaque; the *Mayfield* court did not cite its apparently conflicting holding in *Barnett* or any other case interpreting section 38. Since the court's hypothetical was not part of the holding in the case or necessary to the result, it was *obiter dictum*, and as such is not binding on this Court. *See State ex rel. Childress v. School Trustees*, 150 Tex. 238, 239 S.W.2d 777, 782 (1951); *Seay v. Travelers Indem. Co.*, 730 S.W.2d 774, 777 (Tex.App.—Dallas 1987, no writ).

While the language from the three supreme court opinions applying or interpreting section 38 is not entirely consistent, the supreme court has never applied section 38.006 to hold that attorney's fees may not be awarded under section 38.001 in a suit on an insurance policy. Furthermore, the court has never repudiated its holding in *Barnett*, in which it assumed that attorney's fees may be awarded under section 38.001(8) in a suit on an insurance policy *and did award fees under that section*. It remains the law in Texas that attorney's fees may be awarded under section 38.001(8) in a suit on an insurance contract. In the present case, the Guaranty Association brought suit in subrogation for Southwest Aggregates' rights under its contract with Alliance. The trial court properly found that Alliance breached its contract with Southwest Aggregates by refusing to provide a full defense. Furthermore, the Guaranty Association made a timely presentment of its claim and has fulfilled the other requirements of section 38.002. *See* Tex. Civ. Prac. & Rem.Code § 38.002 (West 1997). We therefore conclude that the trial court erred in refusing to award attorney's fees under section 38.001(8). The Guaranty Association's sole point of error is sustained.

The Guaranty Association has requested a total of $17,590 in attorney's fees: $6,790 for prosecuting the action below, and $10,800 for prevailing on an appeal to this Court. There is uncontested evidence in the record to support the reasonableness of these amounts; furthermore, Alliance does "not dispute the proof of reasonableness and necessity offered by [the Guaranty Association]." In the absence of any evidence controverting the proof of reasonableness, we are authorized to render judgment that the Guaranty Association be awarded $17,590 in attorney's fees for its efforts to date. *See New Braunfels National Bank v. Odiorne*, 780 S.W.2d 313, 320–21 (Tex.App.—Austin 1989, writ denied). Since the reasonableness of Guaranty Association's request for future attorney's fees for $1,350 for any application for review from the supreme court and $5,400 if review is granted is also uncontested, we render judgment that the Guaranty Association be awarded these amounts conditionally if it prevails in any appeal from this Court.

In its final point of error, Alliance requests attorney's fees pursuant to section 37.009 of

the Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (West 1997). As the parties acknowledge, the trial court has discretion in deciding whether to award attorney's fees under this section. *See, e.g., National Union Fire Ins. Co. v. Olson,* 920 S.W.2d 458, 462 (Tex.App.—Austin 1996, no writ). A trial court's denial of attorney's fees under section 37.009 will not be reversed unless the complaining party shows a clear abuse of discretion. *See id.* Our disposition of the other eight issues in the Guaranty Association's favor confirms that the trial court did not abuse its discretion in refusing to award attorney's fees to Alliance. The ninth point of error is overruled.

### CONCLUSION

Today, we hold that an insurer has the duty to provide a full defense to its insured, not merely a pro rata defense. We also hold that the Guaranty Act requires an insured to exhaust its right to a defense under any policies with other insurers before the Guaranty Association's statutory obligations are triggered. The trial court did not err in resolving these issues in the Guaranty Association's favor in its grant of summary judgment, and we affirm its judgment in these respects. However, the court below did err in refusing to award the Guaranty Association the attorney's fees it requested under section 38.001(8) of the Civil Practice and Remedies Code. We therefore reverse the district-court judgment insofar as it denies the Guaranty Association's request for attorney's fees, and render judgment that the Guaranty Association be awarded attorney's fees as follows: $17,590 for the action below and successful appeal to this Court; $1,350 conditionally, if application to the supreme court for review is sought; and $5,400 if the supreme court grants review and the Guaranty Association prevails on any such appeal.