TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00084-CV






John W. Berkel and John W. Berkel, P.C./Texas Property and Casualty


Insurance Guaranty Association, Appellants



v.



Texas Property and Casualty Insurance Guaranty Association/John W. Berkel


and John W. Berkel, P.C., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 479,513, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING







 John W. Berkel, P.C. ("Berkel") sued the Texas Property and Casualty Insurance
Guaranty Association ("Association") and Stephen S. Durish ("Receiver") in his capacity as receiver
for National County Mutual Fire Insurance Company ("National"). (1) On competing motions for
summary judgment, the trial court awarded Berkel judgment against the association in the amount
of $6,306 on Berkel's cause of action to enforce a contract. (2) The judgment denied, however,
Berkel's related claims for statutory attorney's fees, statutory postjudgment interest, and prejudgment
interest.

 The Association appeals from that part of the judgment awarding Berkel a recovery
of $6,306. We will affirm that part of the judgment. Berkel appeals from that part of the judgment
denying its claims for attorney's fees, prejudgment interest, and postjudgment interest. We will
reverse that part of the judgment, sever it from the remainder, and remand to the trial court the part
reversed.


THE CONTROVERSY


 Leonard Jiminez purchased from National a policy of automobile-liability insurance.
In 1986, during the policy term, Jane T. Winnow sued Jiminez in Harris County to recover for
personal injuries she allegedly sustained in an automobile collision with Jiminez. National engaged
Berkel to defend Jiminez. Following a jury trial in March 1989, the trial court ordered that Winnow
take nothing by her suit against Jiminez.

 In Cause Number 453,041, the 201st Judicial District Court of Travis County, by an
order dated October 24, 1988, placed National in receivership. The receivership proceeding was
governed by article 21.28 of the Texas Insurance Code. See Tex. Ins. Code Ann. art. 21.28 (West
Supp. 2002). On February 9, 1989, the Commissioner of Insurance designated National an
"impaired insurer" as defined in article 21.28-C of the code. See Tex. Ins. Code Ann. art. 21.28-C,
§ 5(9) (West Supp. 2002). Berkel thereafter filed in Cause Number 453,041 an updated proof of
claim for services provided and expenses incurred in defending Jiminez.

 In a letter dated November 14, 1989, the Receiver notified Berkel as follows:


[Your claim] has been approved as a covered claim in the amount of $6,306.00
under the provisions of Article[s] 21.28 and 21.28-C of the Texas Insurance Code. 
A check in the amount of $6,306.00 will be forwarded to you when we receive a
properly executed release. Please execute the enclosed release and have it properly
notarized [sic] before a notary public before returning it to us.



(Emphasis added.) Berkel signed the sworn release before a notary public on November 28, 1989,
and returned it to the Receiver. Thereafter the Receiver gave Berkel a bank check in the amount of
$6,306 dated January 4, 1990. It was, however, made payable to Berkel and Jiminez jointly. Berkel
was unable to locate Jiminez to obtain his endorsement. As a result, Berkel could not negotiate the
check for payment. The Receiver refused to issue a check payable solely to Berkel. Berkel's written
demand for payment was unsuccessful.

 While the receivership remained pending in Cause Number 453,041, Berkel filed in
the same court a petition initiating Cause Number 479,513, the litigation now before us on appeal. 
The original petition, afterward amended, fairly set forth alternative causes of action, namely: (1) an
action to enforce an express contract allegedly evidenced by Berkel's proof of claim, the Receiver's
letter of November 14, 1989, Berkel's execution and delivery of the release, and the $6,306 bank
check; (2) an action for breach of that alleged contract; and, (3) an action on sworn account. Because
we conclude the summary judgment record established as a matter of law Berkel's right to recover
on the first cause of action, we need not discuss the others.

 The cause now before us remained unadjudicated when the judge in the receivership 
proceeding signed on August 5, 1994, an "Agreed Order in Connection with Guaranty Association's
Election." Among other provisions, the agreed order directed the Receiver to notify "all persons and
entities with pending unresolved 'covered claims' in this receivership" that the Association had
elected to assume the payment of "covered claims" under articles 21.28 and 21.28-C. Under the
heading "Findings," the receivership court determined as follows in the agreed order: (1) the
Association is the receiver's "statutory successor . . . with respect to the obligation to handle and pay
all 'covered claims' on policies issued by National County"; (2) the Association, in electing to
assume payment of covered claims "does not succeed to or assume any liabilities . . . which have
been asserted against the Receiver . . . which are not 'covered claims' as defined in Tex. Ins. Code
Ann. art. 21.28-C"; and, (3) the Association "has no obligations in connection with any other claims
except those that are 'covered claims.'"

 In a verified answer filed in the present cause after the date of the agreed order, the
Association interposed against Berkel's actions the following: (1) a general denial and a denial of
the particulars of Berkel's sworn account; (2) a denial that the Association was a party to any
contract alleged by Berkel as a basis for a contract action; and, (3) a denial that Berkel's claim was
a "covered claim," the only kind of claim for which the Association is liable under the Code. The
Association alleged Berkel's claim was not a covered claim under the Code because Berkel's proof
of claim was defective; and, moreover, neither the Receiver nor the Association was obliged to
defend Jiminez for whom Berkel conducted a defense. Construing this last-named allegation most
favorably to the Association, we interpret it to be an allegation that Berkel's claim was not a covered
claim because it did not arise out of the Jiminez policy and was not within its coverage, a matter we
will explain below.

 The parties filed competing motions for summary judgment consistent with their
theories of action and defense. Without stating a basis therefor, the trial court awarded Berkel
summary judgment for $6,306 but denied Berkel's related claims for statutory attorney's fees,
prejudgment interest, and postjudgment interest. These appeals ensued.


THE STATUTES


 The material facts are undisputed. The appeals depend upon the construction and
application of articles 21.28 and 21.28-C of the Texas Insurance Code, as those statutes existed at
the relevant times. The two statutes govern receivership proceedings applicable to certain kinds of
insurance companies. We believe it will be convenient and useful to summarize the relevant
statutory provisions before turning to the parties' respective assignments of error. In our summary,
unless otherwise indicated, citations refer to the Texas Insurance Code as it existed in 1999. (3)

Article 21.28


 Article 21.28, insofar as it applies here, establishes procedures that govern the
receivership of insurers domiciled in Texas. When a district court finds it necessary to do so, it
appoints a receiver designated by the State Board of Insurance. Title to the insurer's property and
other assets ordinarily vests in the receiver on the date the proceeding commenced; and, the rights
and liabilities of the insurer, policy holders, creditors, and others interested in the estate are
ordinarily fixed on the same date, save for the rights of claimants holding unliquidated or
undetermined claims. Tex. Ins. Code Ann. art. 21.28, § 2(a)-(c) (West Supp. 2002).

 On taking possession of an insurer's assets, the receiver conducts the insurer's
business thereafter subject to the direction of the court. The receiver is not, however, required to
defend any action brought against the insurer's insured. The receiver's obligations, in relation to the
insurer's assets, are secured by the receiver's bond. Id. § 2(d), (e).

 Included among the receiver's responsibilities are a duty and discretionary power to
approve or reject claims against the insurer based upon a proof-of-claim procedure set out in the
statute. If the receiver approves a claim, an interested party may object. After notice and hearing,
the receivership court then determines the disputed claim in the receivership proceeding itself. If
the receiver rejects a claim, the claimant may have the issue re-determined in a trial de novo
conducted in the receivership court but in a separate cause that is governed by the rules of procedure
and appeal applicable in civil cases generally. Id. § 3(a)-(h). Approved claims are paid from the
insurer's assets according to a schedule of priorities prescribed in the statute. Id. § 8.

 The legislature intended that the foregoing provisions of article 21.28 operate in pari
materia with the provision of article 21.28-C. See, e.g., Tex. Ins. Code Ann. art. 21.28-C, §§ 2, 8(a),
10(a), 17, 19 (West Supp. 2002).


Article 21.28-C


 Article 21.28-C was enacted to provide funds that a receiver may draw upon to pay
covered claims (and protect in other ways the holders of such claims) when the assets of the
receivership estate are temporarily unavailable or prove insufficient for the purpose. Id. §§ 2, 8. The
statutory apparatus for effectuating this purpose is set out in article 21.28-C operating in conjunction
with article 21.28.

 Article 21.28-C establishes the Association as a non-profit legal entity. As a
condition precedent to the authorized transaction of insurance in Texas, the statute requires
compliance with its terms by all insurers licensed to do business in the State save those expressly
excluded. Id. § 3(a). National comes within the scope of the statute. See id. § 6.

 The Association operates under a plan approved by the Commissioner of Insurance
and undertakes generally to discharge the policy obligations of an impaired insurer in receivership. 
Id. §§ 8(b), 9. To that end, the Association investigates, adjusts, compromises, settles, and pays
claims against the impaired insurer to the extent of the Association's obligations under the statute. 
Id. § 8(d).

 The funds that article 21.28-C was designed to provide derive from a system of
proportional assessments made against Association members from time to time. The resulting funds
supplement those available to the receiver from marshalling and liquidating the insurer's assets in
the receivership proceeding. Id. §§ 8(c), 18-20. 

 In administering the provisions of article 21.28-C, the Association is obligated to pay 
"covered claims" that exist before an insurer is designated an impaired insurer or that arise within
certain periods thereafter; and, "[t]he obligation is satisfied by paying to the claimant the full amount
of a covered claim for benefits." Id. § 8(a).

 "Covered claim," a key term for purposes of this appeal, is defined in article 21.28-C. 
In a broad sense, the term encompasses claims made on insurance policies issued by an "impaired
insurer." Id. § 5(8). An impaired insurer is one "placed in temporary or permanent receivership
under an order of a court . . . based on a finding of insolvency and that has been designated an
impaired insurer by the [C]ommissioner" of Insurance. Id. § 5(9)(A). The term "covered claim"
is limited, however, by the following provisos: (1) the claim must be made by an insured or by a
third-party liability claimant; (2) the claim must arise out of and be within policy coverage, and may
not exceed policy limits; (3) the policy must be one issued or assumed by an insurer licensed to do
business in Texas and the claimant must be a Texas resident at the time of the insured event; (4) the
claim is limited in amount to $300,000 save for worker's compensation claims; and (5) the term
"'covered claim' shall not include supplementary payment obligations, including adjustment fees
and expenses, attorney's fees and expenses, court costs, interest and penalties, and interest and bond
premiums incurred prior to the determination that an insurer is an impaired insurer under this Act[,]"
nor shall the term "include any prejudgment or postjudgment interest that accrues subsequent to the
determination that an insurer is an impaired insurer under this Act." Id. § 5(8).

THE ASSOCIATION'S APPEAL


 The Association contends the trial court erred in denying its motion for summary
judgment and sustaining Berkel's motion. The Association reasons that Berkel's claim is not a
covered claim as a matter of law under a proper construction and application of the statutory
provisions outlined above; and, because the Association is liable solely for covered claims, the
judgment must be reversed. The Association points out that neither the Receiver nor the Association
was obliged to defend Jiminez; thus, Berkel's claim for defending Jiminez is not within the policy
and could not arise out of it as article 21.28-C, section 5(8) requires. See Memorial Med. Ctr. v.
Howard, 975 S.W.2d 691, 693-694 (Tex. App.--Austin 1998, pet. denied). Moreover, the
Association argues, article 21.28-C, section 5(8) defines the term "covered claim" to mean "an
unpaid claim of an insured or third-party liability claimant," and Berkel is neither. He was, instead,
simply an attorney engaged by National to defend Jiminez. See Texas Prop. & Cas. Guar. Ass'n v.
Southwest Aggregates, Inc., 982 S.W.2d 600, 610 (Tex. App.--Austin 1998, no pet.).

 These contentions, however valid they may be in the abstract, come too late and in
the wrong proceeding. In Howard and Southwest Aggregates, Inc., the trial court was called upon
to make an original decision on the issue of whether a claim amounted to a "covered claim" under
the statutory provisions outlined above. In the present case, however, the trial court was governed
in its decision by this undisputed fact: the Receiver had previously determined, in an exercise of his
statutory powers and responsibilities, that Berkel's claim was a covered claim in the amount of
$6,306. And Berkel sued in the present cause to enforce the contract of which the Receiver's
determination was an evidentiary part. See generally 17B C.J.S. Contracts § 600, 303-304; § 732,
465 (1999).

 The trial court was not free to disregard the Receiver's determination. It was
immaterial in the trial court that the Receiver's determination might be erroneous under Howard and
Southwest Aggregates, Inc. The trial court was not free to re-open the issue of whether Berkel's
claim was a covered claim.

 The legislature placed in the Receiver "discretion to approve or reject any claim filed
against the insurer." Tex. Ins. Code Ann. art. 21.28, § 3(h) (West Supp. 2002). It cannot reasonably
be contended, therefore, that the Receiver acted outside his jurisdiction when he determined that
Berkel's claim was a covered claim. Whether that determination be legally right or wrong in the
abstract, it was nevertheless a valid exercise of the Receiver's statutory authority. Article 21.28,
section 3(h) explicitly contemplates that the receiver might err, within the limits of his jurisdiction
and discretion, in deciding whether a claim is a covered claim. Yet his determination is final and
binding unless set aside in the manner authorized by the statutes themselves: that is the intent,
meaning, and express effect of that part of article 28.28, section 3(h), providing for a judicial re-determination of whether a claim is a covered claim.

 If the receiver rejects a claim, the claimant may within three months after receiving
notice of the rejection sue in a separate cause in the receivership court and have his claim heard and
determined de novo as in an ordinary civil case; "otherwise, the action of the receiver shall be final
and not subject to review." Id. If the Receiver does not reject a claim, this is to say, if he approves
a claim as the Receiver did in Berkel's case, "any party interested" may challenge the Receiver's
determination by filing "objections with the receiver, who shall forthwith present them to the
[receivership] court for determination after notice and hearing." Id. This was the exclusive remedy
and forum to challenge the Receiver's covered-claim determination.

 The Receiver's determination that Berkel's claim was a covered claim was never
objected to, set aside, or revised in the only manner by which that may be done under the pertinent
statutory provisions. It is not contended that the Receiver's determination was invalid because
procured by fraud, nor is it contended that he acted outside his jurisdiction. His determination is
final and binding on Berkel and the Association. Id. It is a subsisting determination by an officer
having statutory authority and a duty to make it. The trial judge was not free to disregard, revise, or
set it aside in the present case outside the receivership proceeding.

 We reject the Association's theory that Berkel's live petition amounts to a suit for
judicial review of the Receiver's determination by trial de novo. The Receiver did not reject
Berkel's claim--a statutory prerequisite to Berkel's right to judicial review. Instead, the Receiver
approved his claim as a covered claim. And Berkel does not seek to revise or set aside the
Receiver's decision; rather, Berkel's petition unmistakably requests enforcement of that decision as
a valid unpaid obligation of the Association.

 The Association also argues as follows: (1) its funds may not be used to pay Berkel's
claim because the Association is not the Receiver; (2) the Association was not a party to any
purported contract between the Receiver and Berkel; and, (3) the agreed order of August 8, 1994,
in the receivership proceeding, expressly limited the Association's obligations to the payment of
"covered claims." We will not revisit the issue of whether Berkel's claim is a covered
claim--Berkel's claim bears that character as a matter of law for purposes of the present litigation
and for the reasons given previously. And the fact that the Association is not the same entity as the
Receiver is immaterial, as is the fact that the Association was not a party to any contract between
Berkel and the Receiver. The Association's liability on the contract arises from the undisputed facts,
the terms of the agreed order, and the statutory provisions invoked by that order.

 Cause Number 453,041, the National receivership proceeding, was initiated before
January 1, 1992. In that cause, the Association elected to assume its responsibilities in the
receivership under articles 21.28 and 21.28-C as they existed at the time. See Act of Aug. 25, 1991, 
72d Leg., 2d C.S., ch. 12, § 1.27(b), 1991 Tex. Gen. Laws 310. Under those statutes, the Receiver
was required to refer covered claims to the Association "for processing" and the Association was
directed to "pay covered claims. . . . The obligation is satisfied by paying to the claimant the full
amount of a covered claim for benefits." Id. §§ 1.03, 1.20, sec. 8(a) (emphasis added). (4)

 In terms consistent with the statutory provisions, the agreed order spelled out the
Association's obligations. Under the agreed order, "the Receiver is required . . . to refer 'covered
claims' to the Association"; "the association is the statutory successor to the Receiver with respect
to the obligation to handle and pay all 'covered claims'"; the Receiver's "duties and responsibilities
as to the 'covered claims' . . . terminate as of the date of [the Association's] election"; and, "the
Association is the proper party in any cause of action related to the obligation to pay 'covered claims'
in this receivership."

 The terms of the agreed order and the relevant statutory provisions as they existed at
the time repel the Association's theory that its funds may not be used to pay Berkel's $6,306 claim
and the Association's theory that it has no contract obligation respecting that claim. The theories
are untenable for the additional reason that they produce an absurd result the legislature could not
have intended: under those theories neither the Association nor the Receiver would be obliged to pay
Berkel's claim even though it has subsisted as a covered claim since 1990 when the Receiver
established its validity as such.

 We hold the trial court did not err in awarding Berkel judgment for $6,306, the "full
amount" of his covered claim as determined by the Receiver.

BERKEL'S APPEAL


 Berkel appeals from that part of the trial-court judgment that denies its claim for
statutory attorney's fees, prejudgment interest, and postjudgment interest. The claim for
prejudgment interest is based on the common-law rule that such interest is an incident of a debt due
and owing; the claim for postjudgment interest is founded on section 304.001 of the Texas Finance
Code. See Tex. Fin. Code Ann. § 304.001 (West Supp. 2002). The claim for statutory attorney's
fees rests on section 38.001 of the Texas Civil Practice and Remedies Code, authorizing such fees
in suits founded on contract. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 1997). The
issue reduces to whether the provisions of articles 21.28 and 21.28-C, properly construed, allowed
a recovery of such sums in cases like the present.

 In reaching his decision about whether Berkel's claim was a covered claim under the
statutes, the Receiver was expressly forbidden to include attorney's fees in calculating the amount
of the covered claim. (5) In the case before us now, that is not an issue; it is not even a consideration. 
We are required instead to decide whether the trial court erred in denying Berkel's claims for
attorney's fees for work done in this lawsuit, and the interest claimed, when Berkel was forced to
sue to recover the $6,306 that the Receiver determined he was owed as a covered claim.

 Berkel's proof of claim and release, the Receiver's award of $6,306 as a covered
claim, and his issuance of a bank check in that amount were undisputed in the summary-judgment
"evidence." They established as a matter of law a right to recover $6,306 on the express contract
alleged by Berkel. See generally 17B C.J.S. Contracts § 600 at 303-304; § 732 at 465 (1999). We
believe Berkel was entitled to attorney's fees, postjudgment interest, and perhaps some part of his
claim for prejudgment interest that we cannot calculate from the record before us.

 The Association was obligated to pay the "full amount" of Berkel's claim. See Tex.
Ins. Code Ann. art. 21.28-C, § 8(a) (West Supp. 2002). These provisions indicate, in our view, a
legislative intention that the Association shall place in the holder's pocket the exact amount of a
covered claim finally fixed in the receivership proceeding in the manner indicated previously. 
Against this inference, however, we must weigh other statutory provisions that might suggest a
contrary intention on the legislature's part.

 Certain statutory provisions might permit a contrary inference. They must, however,
be understood in context. We refer to the express language of article 21.28-C, section 5(8), declaring
that a "covered claim" shall not include attorney's fees and expenses or any prejudgment or
postjudgment interest that accrues subsequent to the determination that an insurer is an impaired
insurer under the Act. Id. § 5(8). These provisions were intended to govern the Receiver's decision-making process whereby a claim is determined to be a covered claim or not, and if so, in what
amount. That is the statutory context in which they are found. We find in the statutes nothing that
suggests the express prohibition against attorney's fees, postjudgment interest, and prejudgment
interest was meant to apply after the receiver makes his covered-claim decision and the time limit
for judicial review of that decision has expired, as in the present case.

 Article 21.28, section 8(d), declares explicitly that "[i]nterest shall not accrue on any
claim subsequent to the date of the commencement of delinquency proceedings." Tex. Ins. Code
Ann. art. § 8(d) (West Supp. 2002). This provision is part of a schedule of relative priorities
established by the legislature in connection with the final distribution of receivership assets. It
governs all valid claims, whether made by an insured, a general creditor, a secured creditor, or any
other. Section 8(d) of article 21.28 appears from its statutory context to govern the entire period
between the commencement and end of the receivership proceeding. We therefore conclude that it
prohibits recovery of prejudgment interest for the period indicated. If a covered claim is approved
but payment is withheld, however, we see nothing in the statutes that precludes recovery of
prejudgment interest, commencing with the date covered claims became due and payable as a class
in the regular course of the receivership proceeding as provided in article 21.28, sections 7A and 8.

 Nothing in articles 21.28 and 21.28-C expressly purports to preclude attorney's fees
and postjudgment interest in cases where payment is withheld after a receiver's covered-claim
determination has become final and binding and the claimant is forced to sue to recover the amount
of his contract debt. Were such ancillary sums denied, we believe it would in practical effect negate
the claimant's statutory right to the "full amount" of his covered claim, reducing the amount of the
claim by the time value of the money involved and the attorney's fees required to collect it. 
Consequently, we believe Berkel was entitled to the statutory attorney's fees and statutory
postjudgment interest for which he prayed, and the trial-court judgment constitutes an abuse of
discretion for denying those sums. The Association's fundamental challenge to Berkel's claim was
that it was not a "covered claim" within the pertinent statutes. The trial court properly rejected that
challenge. Berkel has prevailed on its action to enforce the contract alleged. No reason appears in
the record for denying Berkel's claim for statutory attorney's fees and postjudgment interest. We
hold accordingly.


REMAINING ASSIGNMENTS OF ERROR


 The Association brings several additional assignments of error. These are directed
at a trial-court order that overruled the Association's special exceptions levelled at Berkel's motion
for summary judgment, a supporting affidavit that accompanied the motion, and Berkel's affidavit
opposing the Association's motion for summary judgment.


Berkel's Motion for Summary Judgment


 We believe we may, by analogy, appraise the sufficiency of Berkel's motion for
summary judgment under the rules applicable to pleadings. Rule 45 requires "a statement in plain
and concise language of the plaintiff's cause of action or the defendant's grounds of defense." Tex.
R. Civ. P. 45(b). Rule 47 demands "a short statement of the cause of action sufficient to give fair
notice of the claim involved." Tex. R. Civ. P. 47(a) (emphasis added). "Fair notice" requires
information sufficient to enable the adverse party to prepare a responsive pleading and prepare for
trial. (Only the first is applicable in the summary judgment context where the adverse party may file
a response to the motion for summary judgment and no evidence is taken at the hearing in which the
motion is determined.) The adverse party is not, however, expected to place upon the movant's
language every construction that it will possibly bear: the movant's language must be understood in
its ordinary meaning. In assessing the sufficiency of that language to give fair notice, a court is
guided by two competing factors: the intent of the rules to simplify pleadings and eliminate
technicalities; and, the fact that a fair trial is impossible unless both parties and the court understand
the basic controversy to be determined. 2 Texas Civil Practice § 7:4, 129-131 (Diane M. Allen et
al. eds., 1992 ed.) (Roy W. McDonald, orig. ed.). "The test should be whether an opposing attorney
of reasonable competence, perusing the pleadings, can ascertain the nature and the basic issues of
the controversy." Id. at 131; see, e.g., Garvey v. Vawter, 795 S.W.2d 741, 742 (Tex. 1990); Thomas
v. Cisneros, 596 S.W.2d 313, 316 (Tex. Civ. App.--Austin 1980, writ ref'd n.r.e.).

 While the Association levelled numerous special exceptions at Berkel's motion, it
complains on appeal that the trial judge abused her discretion in overruling only five, namely: that
Berkel's motion failed to: (1) state the elements of a covered claim; (2) distinguish between the
Receiver and the Association; (3) distinguish between Berkel and John W. Berkel in his individual
capacity; (4) identify the subsisting final judgment upon which Berkel based a claim that he was
entitled to prejudgment interest by reason of res judicata; and, (5) state the grounds upon which
Berkel claimed a right to summary judgment.

 Items one and two are based on the Association's erroneous premise that Berkel sued
in the present cause to establish a covered claim as an original matter. In its motion, Berkel spelled
out the relationship between the Receiver and the Association as we have summarized it previously. 
The Association's assumption of the Receiver's obligations under the agreed order and relevant
statutory provisions is an undisputed fact in the summary judgment record.

 Concerning item three above, we observe that Berkel's motion is replete with
references to both Berkel and John W. Berkel in his individual capacity, but the two names are not,
as the Association contends, used "interchangeably" in the sense that the motion averred a right to
duplicate recoveries. We believe the Association could not have been misled in this regard. The
exact relationship between the two plaintiffs is set out in the motion, John W. Berkel's
accompanying affidavit, and the balance of the summary judgment record.

 Item four does complain, we believe correctly, of a want of fair notice in the matter
of res judicata. Any error was harmless, however, because we have held that Berkel might be
entitled to a part of its claim to prejudgment interest on the independent ground that such a recovery
is authorized under the pertinent statutory provisions discussed previously.

 We disagree with the contention in item five that Berkel's motion failed to give fair
notice of the ground upon which it requested judgment as a matter of law. Following a lengthy
recitation of the facts surrounding and giving rise to the present litigation, Berkel's motion recited
as follows:


Accordingly, Plaintiffs seek judgment against Defendants for the amount of the
previously approved covered claim and for [attorney's fees] reasonably and
necessarily occurred [sic] in this cause, pre- and post-judgment interest as may be
allowed in law, costs of court and all other relief to which Plaintiffs may be entitled.


. . . . 


The issues in dispute in this cause relate to the legal liability, if any, of [the
Association] for interest and attorney's fees on a previously approved claim.


. . . .


Accordingly, Plaintiffs move the Court to make a legal determination on whether or
not the Guaranty Fund is liable for interest and attorney's fees incurred in the
prosecution of the instant suit to collect an approved claim. These are legal questions
and not factual questions.


We believe the foregoing is plainly sufficient to give fair notice, in the requisite sense of that term,
regarding the ground upon which Berkel asked for summary judgment.

 We hold the trial judge did not abuse her discretion in overruling the special
exceptions made by the Association against Berkel's motion for summary judgment.


Berkel's Affidavits


 The Association objected to an affidavit filed by Berkel in support of its motion for
summary judgment and another affidavit, almost identical, filed in opposition to the Association's
motion for summary judgment. The Association urged the following objections against the
affidavits:

 The affidavits set forth unfounded legal conclusions unsupported by facts. Berkel
requested summary judgment on its cause of action to recover the principal amount of the covered
claim as a debt owing under a contract evidenced by the various documents mentioned previously. 
The execution and delivery of those documents are not disputed in the summary judgment record. 
Similarly, Berkel's motion requested summary judgment on its related claims for attorney's fees and
interest, averring that "[t]hese are legal questions and not factual questions" under the relevant
statutory provisions. Given the averments in the motion, it appears that the "legal conclusions" made
by Berkel in the affidavits were at best redundant as being no more than legal argument. They were
irrelevant to the trial judge's decision, which merely required applying the relevant statutory
provisions to the undisputed facts in the record. Any error was therefore harmless.

 The affidavits were ambiguous in failing to distinguish between Berkel and John W.
Berkel in his individual capacity and between the Association and the Receiver. The Association
cites as an example of the first defect the fact that the "proof of claim filed by Plaintiffs herein is
attached" to the affidavit but on its face the proof of claim is one filed by John W. Berkel, P.C., and
not by Berkel in his individual capacity. Continuing, the Association points to the ambiguity raised
by the statement that "Plaintiffs" had performed all their obligations under the contract while
elsewhere the affidavit implies that the professional corporation alone owned the claim; and, the
Association makes the same charge of ambiguity against statements in the affidavit that the
"Plaintiffs" executed the release, made demand for payment, and claimed the contract debt. We
believe that a reasonably competent attorney could have understood whatever distinctions were
necessary to ascertain the nature of the controversy and the ground upon which Berkel requested
judgment as a matter of law.

 In the Association's complaint of ambiguity in Berkel's failure to distinguish between
the Association and the Receiver, the Association complains, for example, that "Mr. Berkel stated
in both Affidavits that 'a true and correct copy of the approval and decision of the receiver and [the
Association] is attached hereto as Exhibit C,'" but the document referred to is signed by the Receiver
alone. The Association makes similar complaints against Berkel's statement that both the
Association and the Receiver issued the $6,306 check and that a demand was made upon both the
Association and the Receiver. The remaining complaints are of the same character.

 We believe it is abundantly clear from Berkel's motion and response, and the affidavit
that accompanied each, that Berkel's claim against the Association derived from the statutory
provisions and agreed order wherein the Association assumed the Receiver's obligations regarding
covered claims. Moreover, we believe the Association was not misled; it filed its special exceptions
more than three years after the "partial" summary judgment reached by agreement of the parties as
to Berkel's claims against the Receiver. We conclude the affidavits are not defective for failing to
give fair notice sufficient for the Association to understand the nature of the controversy and to
respond to Berkel's affidavits.

 We overrule the Association's remaining points of error.

 For the reasons stated above, we reverse that part of the judgment denying Berkel's
claim for attorney's fees, prejudgment interest, and postjudgment interest. We sever those claims
from the remainder of the judgment and remand them to the trial court for further proceedings not
inconsistent with our opinion and with an instruction that Berkel's entitlement to prejudgment
interest, if any, be determined in accordance with the limitation we have placed on that claim,
namely: it may be recovered only for the period beginning with the date covered claims became due
and payable in the regular course of the receivership proceeding and ending with the trial-court
judgment. We affirm the balance of the judgment.



 

 John E. Powers, Justice

Before Justices Yeakel, Patterson and Powers*

Affirmed in Part; Reversed and Remanded in Part

Filed: November 7, 2002

Publish


* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. It is undisputed in the summary judgment record that John W. Berkel is the president and sole
shareholder of John W. Berkel, P.C. John W. Berkel appeared in the cause as a plaintiff; the trial-court judgment orders that he take nothing in his individual capacity. We will affirm that order. He
appears as an appellee only in the event a dispute arises concerning the standing of the professional
corporation. None has arisen.


 Early in the litigation, Berkel recovered a "partial" summary judgment against the Receiver in
the amount of $842. The Receiver paid the judgment. As a result, the final judgment we now
review orders that Berkel take nothing by his claim against the Receiver. We will affirm that part
of the judgment. No party has appealed from that part; the Receiver is not a party to the appeal.
2. Berkel's live petition at the time of the summary judgment proceeding alleged alternative
causes of action, namely: (a) an action to enforce a contract under which he was owed $6,306; (b)
an action for damages in that amount for breach of contract, and (c) an action on sworn account
arising from dealings between the parties. Berkel's motion for summary judgment, liberally
construed in favor of the Association, requested judgment on all three actions. We will affirm the
judgment on the basis of (a) and need not consider the remaining two actions.
3. Unless a material change occurred after 1999, the current code is cited for convenience. As part
of the statutory recodification program, articles one through twenty-seven of the existing insurance
code were recodified as Title One of the current code, now with the short title, "The Insurance Code
of 1951." See Act of April 30, 1999, 76th Leg., R.S., ch. 104, § 2, 1999 Tex. Gen. Laws 534.
4. Section 1.03 of the 1991 enactment amended section 3 of article 21.28 by adding subsection
(i) to read as follows:


(i) Notwithstanding any other provision of this article, if a claim is covered by a guaranty
fund created under Article . . . 21.28-C . . . of this code, the receiver shall refer the claim
to the . . . guaranty association for processing.


Act of Aug. 25, 1991, 72d Leg., 2d C.S., ch. 12, § 1.03, 1999 Tex. Gen. Laws 253. Section 1.20 of
the 1991 enactment amended article 21.28-C of the Insurance Code extensively. After the
amendment, section 8 of article 21.28-C provided as follows:


Sec. 8. POWERS AND DUTIES OF ASSOCIATION. (a) The association shall pay
covered claims that exist before the designation of impairment or that arise within 30 days
after the date of the designation of impairment, before the policy expiration date if the
policy expiration date is within 30 days after the date of the designation of impairment,
or before the insured replaces the policy or causes its cancellation if the insured does so
within 30 days after the date of the designation. The obligation is satisfied by paying to
the claimant the full amount of a covered claim for benefits.


Id. § 1.20, sec. 8(a), 1999 Tex. Gen. Laws 266 (emphasis added). Section 1.27(b) of the 1991
enactment authorized the Association to "elect to assume its responsibilities under this Act in
proceedings initiated before January 1, 1992," the effective date of the enactment. Id. § 1.27(b),
1999 Tex. Gen. Laws 310.
5. See, e.g., Metry, Metry, Sanom & Ashare v. Michigan Prop. & Cas. Guar. Ass'n, 267 N.W.2d
695, 697-98 (Mich. 1978); Ohio Ins. Guar. Ass'n v. Simpson, 439 N.E.2d 1257, 1258-59 (Ohio Ct.
App. 1981). Articles 21.28-C and 21.28 expressly exclude such sums from the category of covered
claims. The Receiver presumably complied with the statutory provisions.